KARL P. SPENCER, Administrator *Pendente Lite De Bonis Non* of Estate of CAROLINE J. PEPER, v. ESTELLE PEPER BUSHMAN BARLOW, Appellant.—5 S. W. (2d) 28.

Division Two, April 9, 1928.

*Harry H. Haeussler, Foristel, Mudd, Blair & Habenicht* and *Chas. J. Macauley* for appellant.

838

*W. W. Henderson* for respondent.

DAVIS, C.—This is a proceeding instituted in the Probate Court of the City of St. Louis by the administrator *pendente lite de bonis non* of the estate of Caroline J. Peper, deceased, to discover assets in the hands of defendant belonging to said estate. The administrator began the proceeding by filing an affidavit in compliance with Section 62, Revised Statutes 1919, charging the wrongful withholding of assets of said estate, upon which the probate court issued a citation for defendant to appear for examination. Subsequent to her return to the citation, denying that she was wrongfully withholding assets, the administrator called defendant to the stand, examining her at length. Thereupon the administrator, following the statutory practice in such proceedings, filed interrogatories which defendant

answered. Upon a hearing had, the probate court sustained the citation as to Certificate No. 44 for 789 1/25 shares of stock of the Christian Peper Tobacco Company, ordering defendant to deliver same forthwith to the administrator *pendente lite*, but dismissing the citation as to the jewelry inventoried and claimed by defendant. On an appeal by defendant to the circuit court, a trial *de novo* was had, the jury returning a verdict for defendant, finding that she was the owner and entitled to the possession of the certificate of stock and the jewelry. On motion for a new trial, the court sustained same on the ground that it erred in refusing an instruction offered by plaintiff on the burden of proof.

L. Frank Ottofy, administrator *pendente lite de bonis non*, who instituted the proceeding, resigned, the cause being revived in the name of Karl P. Spencer, who succeeded him as such administrator. Furthermore, since the institution of the suit, Estelle Peper Bushman intermarried with a Mr. Barlow, thereby permitting the substitution of the name of Estelle Peper Bushman Barlow as party defendant.

It is unnecessary to set forth *in haec verba* more than four of the twenty-five interrogatories filed by plaintiff. The first four read:

"1. Have you in your possession or under your control, or have you pledged or disposed of, Certificate No. 44 for 789¼ shares of the capital stock of Christian Peper Tobacco Company of the par value of one hundred dollars each, or the proceeds thereof, which belonged to Caroline J. Peper at any time prior to her death or which were purchased with moneys belonging to Caroline J. Peper, deceased, prior to her death? If you have said certificate of stock in your possession or under your control, when and where did you come into possession of said certificate of stock and what consideration, if any, did you give Caroline J. Peper for said certificate of stock?

"2. If you have said certificate of stock in your possession or under your control, do you claim to have acquired the same by purchase, gift or contract? If by contract, was the same in writing, and if in writing attach a copy of said writing to the answer to this interrogatory.

"3. If the gift, purchase or contract was not in writing, state the facts under which you acquired possession and control of said certificate?

"4. Who was present at the time any gift, purchase or contract was executed by which you came into possession of said property?"

The remaining interrogatories are composed of similar questions relative to a gold bracelet, a pair of diamond earrings and a brooch set with fourteen diamonds, a platinum ring with two large diamonds, one ruby and several diamonds, one gold brooch set with coral cameo, a pair of gold earrings set with coral cameo, and one baby ring,

except the twenty-fifth interrogatory which inquires whether defendant has disposed of any and what property, to whom, the consideration, and the circumstances under which such property ·was disposed of. Defendant's answers filed to said interrogatories read:

"Answer to interrogatories Nos. 1, 2, 3 and 4: I have not now and did not have at the time of the death of Caroline J. Peper, in my possession or under my control, Certificate No. 44 for 7891¼ shares of the stock of the Christian Peper Tobacco Company, belonging to Caroline J. Peper, nor have I at any time pledged or disposed of said certificate."

The answers to interrogatories numbered 5, 6, 7 and 8, and numbered 9, 10, 11 and 12, and numbered 13, 14, 15 and 16, and numbered 17, 18, 19 and 20, and numbered 21, 22, 23 and 24, recite in substance that defendant did not have in her possession or under her control one gold bracelet, or a pair of diamond earrings and the brooch set with fourteen diamonds, or a platinum ring with two large diamonds, one ruby and several diamonds, or one gold brooch set with coral cameo and a pair of gold earrings set with coral cameo, or a baby ring, which belonged to Caroline J. Peper at the time of her death.

The evidence adduced on the part of the plaintiff warrants the finding that defendant was appointed executrix of the estate of Caroline J. Peper, her mother, by her will. Upon a will contest being filed (See Bushman v. Barlow, 316 Mo. 916, 292 S. W. 1039), defendant's authority as executrix was revoked, and L. Frank Ottofy was subsequently appointed administrator *pendente lite de bonis non* of the estate. The inventory filed by defendant as executrix shows that Caroline J. Peper at the time of her death was the owner of 2087 49/50 shares of stock of the Christian Peper Tobacco Company of the par value of one hundred dollars, among which as a part of her estate was listed Certificate No. 44 for 789 1/25 shares: With respect to the jewelry, the inventory shows the following:

"The following described jewelry was found in the safe deposit box and claimed by Estelle Peper Bushman as her personal property:

"One pair diamond earrings and brooch set with fourteen diamonds ............................................................$450.

"Platinum ring with two large diamonds, one ruby and several small diamonds ............................................. 500

"One gold brooch set with coral cameo and pair of gold earrings set with coral cameo ............................... 500

"One baby ring, no value."

The secretary of the Christian Peper Tobacco Company stated that he was custodian of the records, holding the office of secretary since 1915, and that Certificate No. 44 for 789 1/25 shares, issued in the name of Caroline J. Peper, had not been transferred on the books of

the company, but had remained in the name of Caroline J. Peper on the transfer books. The certificate was issued to her and she receipted therefor on October 7, 1913.

Christian C. Peper Bushman, brother of defendant and son of Caroline J. Peper, testified in substance that Certificate No. 44 for 789 1/25 shares of stock of Christian Peper Tobacco Company belonged to his mother at the time of her death. That about two years before his mother died that share of stock was right there in the room. That his mother had all the stock there, as they wanted to see how many shares the stock totaled. That those shares that she had there totaled a little over two thousand. Defendant was there, making no claim to these 789 1/25 shares of stock. On cross-examination, the witness stated that he did not remember the numbers, nor the total. He remembered the certificate because his mother had indorsed it on the back and his sister stuck her name in there afterwards. He also remembered what his sister said—that it didn't mean anything. He remembered this particular share of stock because his mother had indorsed it over to his sister. Relative to the jewelry, he stated that his mother never had this diamond and ruby ring. He saw his mother have a platinum ring, which came from his grandmother's estate. As to the diamond brooch, he stated that he saw his mother have it; that he thought it was the same, but he did not know about the stones. His recollection was that the stones had a more yellowish tinge than the one examined. As to whether or not this was the brooch his mother had, he answered that it was the same pattern. The earrings were the same his mother had. If he ever saw the baby ring, he did not remember it.

Witness Rubenstein testified that the brooch with eleven stones and two pendant stones were white sapphire or imitation diamonds, worth about nine dollars. The diamond earrings were white sapphires, worth about ten dollars. The three cameo pieces were worth about ten dollars. The diamond ring set with a ruby were diamonds worth about two hundred and twenty-five dollars.

A. A. Harper, witness for plaintiff, a jeweler, corroborated the testimony of Rubenstein in substance, placing, however, slightly different values on the articles of jewelry. This was in substance all the testimony for plaintiff.

The evidence on behalf of defendant warrants the finding that plaintiff did not have in her possession Certificate No. 44 for 789¼ shares of the capital stock of the Christian Peper Tobacco Company mentioned in the interrogatories, but that she had Certificate No. 44 calling for 789 1/25 shares of the capital stock of that company. Charles Peper, a lawyer and cousin of testatrix, stated that he saw Caroline J. Peper execute the assignment on the back of Certificate No. 44, which is as follows:

"For value received *I* hereby sell, assign and transfer unto *Estelle Peper Bushman* shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint—— to transfer the said stock on the books of the within named corporation with full power of substitution in the premises.

"Dated *March 8, 1915*.

"In presence of *Charles Peper*.

"*Caroline J. Peper.*"

The words italicized are in ink and in the handwriting of Caroline J. Peper, except the name of Charles Peper.

The witness further stated that it was signed in his presence, and that Caroline J. Peper asked him to sign it as a witness to her signature, and that he did so sign it as a witness. That after Caroline J. Peper had signed her name and he his name as a witness to her signature, she handed it to defendant, saying, "Estelle, I give this to you in return for your kindness," defendant taking it in her hand.

Defendant testified in substance that her mother, Caroline J. Peper, gave her the certificate on March 8, 1915, in the place of business of the St. Louis Union Trust Company. That she saw her mother sign her name to the assignment on the back of the certificate; that she saw Charles Peper sign as a witness to her mother's signature. That when, on that date, her mother handed the certificate to her, she, defendant, took it, placed it in her safe deposit box and has been in possession of it ever since, with the exception of the time she pledged it to a Mr. Levy as collateral security for a loan of money which she and her mother obtained from him.

The witnesses to the inventory and appraisement testified that they did not find or discover the certificate of stock among the papers and effects of Caroline J. Peper, when seeking information to make up the inventory and appraisement of the estate, which was later filed.

Defendant testified that there was an error in the inventory and appraisement. After her mother's death she had a nervous breakdown, becoming ill with the flu. She left her home on the advice of her physician, going to Labadie, Missouri. Returning from Labadie, she was very ill, requiring a trained nurse for three or four weeks. She then went to Indiana, staying until about December 1, 1920. She was much better on her return, but the physician advised that she be careful. She stated that she did not read the inventory and did not know there was listed in the inventory the certificate of stock in question. Harry H. Haeussler, attorney for defendant in the preparation of the inventory and appraisement, stated that he did not obtain the information that said certificate of stock belonged to the estate of Caroline J. Peper from defendant, but that he obtained such information from a letter received from the Christian Peper Tobacco Company, which letter is in evidence and shows that cer-

tificate No. 44 for 789 1/25 shares of stock, among other certificates, stood in the name of Caroline J. Peper. That defendant was not in good health, and that he had no assistance whatever from her in the preparation of the inventory. That defendant did not read the inventory before she signed it. That he had no information at the time he prepared the inventory as to whom the certificate of stock listed in the inventory and in question belonged, except such information as he obtained from the said letter written by said tobacco company. The reason the inventory was not filed sooner was due to the nervous condition of defendant.

Relative to the jewelry, defendant stated that the earrings and brooches produced by her at the trial were given to her by her mother many years before the mother died, and that she had had them in her possession ever since. They were found by the appraiser in the safe deposit box which she and her mother had. Carrie M. Peper stated that Caroline J. Peper told her on two or three occasions, one of which was nearly twenty years previous, that she had given the jewelry to her daughter Estelle.

The trial court granted plaintiff a new trial, because it said it erred in refusing to give the jury an instruction offered by him, reading:

"The court instructs the jury that under the pleadings in this case the burden of proof is upon claimant, Estelle Peper Bushman Barlow, to establish by the preponderance or greater weight of the credible evidence in this case that the alleged gift, claimed by her to have been made to her by her deceased mother, Caroline J. Peper, of the property in question and mentioned in the pleadings and the evidence herein, was made to her by her deceased mother."

Plaintiff also complains of an instruction given by the court of its own motion, which it is unnecessary to set out, but which unequivocally places the burden of proof on plaintiff to establish by the preponderance or the greater weight of the evidence, the facts necessary to a verdict in his favor under the instructions. Such other facts as are pertinent, if any, will be stated in the opinion.

I. We consider it appropriate to discuss initially the question involving the refusal of the trial court to direct the jury to return a verdict for defendant. Defendant bases her position in that regard on the evidence that the assignment on the back of the certificate of stock was documentary evidence, importing verity on its face, which, supported by evidence on behalf of plaintiff by defendant's brother that he remembered this particular stock because his mother had indorsed it over to his sister, was conclusive proof of a gift by her mother to defendant. While the brother's evidence was contradictory in its essential features and of little probative value, yet it qualified to some extent the fore-

going statement. He testified that the stock belonged to his mother; that his mother had all the stock before her examining it, to determine the aggregate amount; that defendant made no claim to these 789 1/25 shares; that he remembered the certificate because his mother had indorsed it on the back and his sister had stuck her name in there afterwards; that his sister said it did not mean anything. We do not think plaintiff's evidence in this regard is of such force as to admit a valid gift upon the part of the mother to defendant. It denies in effect the verity of the assignment. Furthermore, the evidence on which defendant relies as conclusive was somewhat qualified by the fact that she inventoried the certificate of stock as an asset of the estate, although the explanatory matter, if believed by a jury, was sufficient to break down whatever probative force attached to the inadvertent act.

We are unable to find in the record an unequivocal admission on plaintiff's part as to the verity of the assignment, the validity of the gift or the delivery of the certificate of stock to defendant, all of which was necessary to render the gift effective and complete. On the other hand, while defendant's proof develops all the essential elements necessary to constitute a valid gift *inter vivos*, such as a competent donor and donee capable of taking, a free will and intention to make it, a valid assignment and delivery of the stock by the donor to the donee, gratuitously, irrevocably and with immediate and absolute effect, and the acceptance of it by the donee, in fact a complete gift with nothing left undone, yet this was defendant's evidence, the truth of which was a question of fact. [28 C. J. 626.] Inasmuch as defendant admitted succeeding to the title of the stock by gift, she was required to show the validity of the assignment, the intention to make the gift, the delivery of the certificate to her by her mother, and her acceptance of it, in fact all the essential elements of a gift, together with an explanation of how and why she came to inventory the certificate of stock as an asset of her mother's estate. This raised a question of fact for the jury, resulting that the trial court did not err in refusing to direct the jury to return a verdict for defendant.

Defendant contends, however, that she was entitled to a directed verdict under the ruling in Downs v. Horton, 287 Mo. 414. If the burden of evidence had been upon her rather than the burden of proof, there would be force in the contention. But as defendant admitted title by gift, the burden of proof was cast upon her, as we later show. The burden of proof in its strict sense means the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises. [Downs v. Horton, supra.] In this case the burden was upon the defendant to establish the gift and it never shifted.

II. The trial court overruled a motion for judgment on the pleadings, which plaintiff contends should have been sustained. Error is predicated on the ruling. It seems that after defendant answered the interrogatories, plaintiff filed a motion for judgment on the pleadings, which, in a proceeding of this nature, are the interrogatories and the answers thereto. [Newell v. Edom, 242 S. W. 701.] The motion, which the court overruled, averred the grounds that the alleged answer failed to comply with the statutes and did not numerically answer the interrogatories as required by the statutes; that the alleged answer has not set forth any defense. Plaintiff has failed to indicate a statute in point in that regard. Section 63, Revised Statutes 1919, goes no further than requiring written interrogatories to be answered in writing by the parties cited. Section 64 provides: "If such person refuse to answer proper interrogatories, the court may commit him to jail until he answer or be discharged in due course of law." We see nothing in the statutes that requires interrogatories to be numerically answered. While the statute requires that proper interrogatories must be answered, technicalities should not be indulged. If wholly insufficient answers are returned, a motion for judgment on the pleadings would probably lie. Whether a person cited could be compelled to make other and different answers to interrogatories, we need not decide, for such an issue is not here raised. Reverting to the interrogatories and the answers, a reading of them advises that the answers in effect deny possession on the part of defendant of a certain certificate of stock and jewelry belonging to Caroline J. Peper at the time of her death. This situation raised the general issue, and we think the court properly overruled the motion of plaintiff for judgment on the pleadings.

III. The issue as raised by the pleadings, that is, the interrogatories and answers, was whether plaintiff or defendant was entitled to the possession of the certificate of stock—in reality, whether the estate of Caroline J. Peper or defendant owned it. Plaintiff, under the issue raised, could offer competent evidence tending to show that defendant did not own the stock, but that it was owned by the estate of Caroline J. Peper, deceased. Defendant, on the other hand, could offer evidence tending to show that she owned the stock, and how and by what means she became the owner thereof.

IV. Defendant admitted the fact and the cause was tried by the parties on the theory that defendant acquired title to the certificate of stock and a portion of the jewelry by virtue of a gift from her mother. With respect to such articles the applicable rule as to the burden of proof became operative. It is the general rule of law that the burden of proof rests on the party having the affirmative, and in the matter of gifts the

law has placed the burden on the donee of the gift to develop facts showing a right to the property. Consequently, the burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of the gift. [Tygard v. Falor, 163 Mo. 234, 63 S. W. 672; Newell v. Edom, 242 S. W. 701; 26 C. J. 67.]

It is said in 12 Ruling Case Law, page 971, "the burden of proving that a gift was made, including the elements necessary to its validity, is on the donee." Defendant contends, however, that, inasmuch as the interrogatories and the answers thereto constituted the pleadings, the burden of proof in this case rested on the plaintiff, because the pleadings raised the general issue of ownership, and the burden of proof remained throughout the trial where the pleadings placed it in the first instance. Generally speaking, defendant's contention is true, but when the evidence develops that the defendant is claiming ownershp by virtue of a gift from her mother, the situation is so changed upon the complete facts coming to light as to call in force with respect to a gift the general rule as to the burden of proof. In other words, if defendant had fully developed the facts in her answer as to the gifts, the burden would at once have been cast upon her. To rule otherwise would circumvent an obvious and what the courts have deemed a salutary rule of law.

V. We think it unnecessary to consider whether the court erred in refusing plaintiff's offered instruction on the burden of proof. The court gave an instruction of its own motion, on which plaintiff predicates error, placing the burden of proof on plaintiff to establish by the preponderance or greater weight of the evidence the facts necessary to a verdict in his favor. Such instruction was both erroneous and prejudicial, and should not have been given. While the trial court predicated its action in granting a new trial on its refusal to give an instruction offered by plaintiff, yet, if the action of the trial court in sustaining the motion for a new trial can be upheld on any ground assigned in the motion, it may be done.

Consequently the order sustaining the motion for new trial is affirmed and the cause remanded. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.