STEPHEN A. MAYNARD, AI McCLELLAN AND MARY R. MAYNARD, PLAINTIFFS, RESPONDENTS, v. CHESTER McCLELLAN, EARL Mc-CLELLAN AND IDA McCLELLAN, DEFENDANTS, IDA McCLELLAN, APPELLANT.—156 S. W. (2d) 770.

Kansas City Court of Appeals. December 1, 1941.

*York & York, L. F. Cottey* and *L. E. Atherton* for respondents.

*P. M. Marr* for appellant.

354

CAVE, J.—This is a proceeding for the discovery of assets, instituted by the respondents against the appellant, Ida McClellan. The proceeding originated in the Probate Court of Putnam County, and was certified to the circuit court of that county because the probate judge was a material witness, and thereafter the cause was transferred to the circuit court of Sullivan County.

The cause originated by Stephen A. Maynard, Ai McClellan and Mary R. Maynard, respondents herein, filing an affidavit in the probate court for the purpose of discovering assets alleged to be held by Chester McClellan, Earl McClellan and Ida McClellan, which assets belonged to the estate of "McClellan Heirs," a co-partnership

(John B. McClellan, deceased, being one of the partners). Luther E. Proffer was the duly appointed, qualified and acting administrator of said partnership estate at the time of the filing of such affidavit. To this affidavit, the defendants waived service of notice, entered their appearance, and filed a general denial for answer. Thereafter, the affiants filed interrogatories consisting of thirty-five questions, as provided by Section 64, Revised Statutes of Missouri, 1939. The defendants filed answers to such interrogatories (Section 66, R. S. Mo. 1939), whereupon the affiants, at the instance of the administrator, filed motion for judgment on the pleadings, because ''the second amended answer filed herein admits and confesses all the facts alleged in petitioners' interrogatories and affidavit; and the facts set up in said answer in avoidance of petitioners' cause of action are insufficient in law to constitute a defense.'' The trial court sustained this motion and rendered judgment against Ida McClellan alone for the sum of $2002.36. Motions for new trial and in arrest were filed, overruled, and appeal granted to this court.

The facts giving rise to this controversy can be briefly stated as follows:

In 1895, E. N. McClellan died intestate, the owner of approximately 335 acres of real estate and certain personal property. He left eight children. Some four or five years after his death, five of the children purchased the interest of the other three in said property, and those five continued to operate the farm and purchased additional land from time to time. In 1923, one of the five died, single and intestate, and the other four purchased from her heirs their interest in her estate and continued to operate the farm. In 1930, George McClellan, one of the four partners, died single and testate, and his will provided that his one-fourth interest in all of the lands and personal property should be held in trust by his sisters, Eliza McClellan and Ida McClellan, and his brother, John B. McClellan, during the life of each and every one of them, and authorized them during their lifetime to buy, sell, use and handle his one-fourth interest in the partnership property as they saw fit, and after the death of the last of the three, then his property was to go to certain named persons. In 1932, the sister, Eliza McClellan, died single and intestate, and from 1932, until June 6, 1934, Ida McClellan (appellant) and John B. McClellan continued the operation of the farm and the management of all the personal property. On June 6, 1934, John B. McClellan died, leaving his widow, Blanche McClellan, but no children. From June 6, 1934, until about November 16, 1937, Ida McClellan (appellant), continued the operation of the farm and the management of the personal property under the conditions and circumstances set out in her answers to the interrogatories, which will be noted later.

On November 16, 1937, Luther E. Proffer, by agreement of all the parties interested in said partnership estate, was appointed adminis-

trator and in due time Ida McClellan (appellant) delivered to him the personal property which she then had in her possession, and appraised at the total sum of $7166.09. This proceeding seeks to compel the said Ida McClellan to account for the management of the partnership property between June 6, 1934, and the time of the appointment of the administrator.

In its judgment the trial court made this finding:

"It appearing to the court that the answer of defendants filed herein admits and confesses all of the facts alleged in plaintiffs' interrogatories and affidavit, and the facts set out in respondents' answer in avoidance of petitioners' cause of action are insufficient in law to constitute a defense. Now, therefore, . . ."

Based upon that finding, the court then proceeded in its judgment to charge the appellant with certain items of property and money unaccounted for, which belonged to the partnership estate, the aggregate amount of which was $3058.47; and the court also found that the appellant was entitled to certain credits which totalled $1056.11, leaving the balance due the administrator of the partnership estate the sum of $2002.36, for which judgment was entered. Therefore, we must determine whether appellant's answers to the interrogatories raised issues of fact by proper pleading.

The first interrogatory is:

"Did the partnership designated in the above caption own any personal property between the 22d day of December, 1930, and the 16th day of November, 1937?"

Appellant answered that question in the affirmative.

The second interrogatory is:

"If your answer to question (1.) is YES, then give as complete and detailed a list and description as possible of all items of personal property owned by said partnership between said dates?"

The material part of appellant's answer to that interrogatory is:

"In answer to the second interrogatory it is stated that from December 22, 1930, to June 6, 1934, all property and money of the partnership was handled, managed and controlled solely by deceased partner, John B. McClellan, who died at the latter date, and we are unable to list and describe the items he had and handled."

Then follows a list of live stock and other personal property belonging to the partnership at the death of the partner, John B. McClellan. The answer continues:

"At the time of the death of John B. McClellan his sole and only heirs were Ida McClellan, Ai McClellan, Mary R. Maynard, Stanton McClellan and Blanche McClellan, the widow of the said John B. McClellan, deceased. The said Ida McClellan was the only surviving partner of the said John B. McClellan and the said Ida McClellan and the said heirs of John B. McClellan were the sole and only parties having an interest in the partnership estate and the estate of John B.

McClellan, deceased; that the said partnership estate had no debts, except an outstanding account of approximately $177 due to one A. N. Minear, which was afterward paid by them; at the time of the death of the said John B. McClellan all of his said heirs and every person interested in the said partnership estate deemed it to the best advantage of all parties interested, due to economic conditions, to continue and not to liquidate the business of said partnership in which they and no one else had an interest; that after the death of the said John B. McClellan, by the consent and authority of every person interested in said partnership estate and in the estate of John B. McClellan, deceased, the surviving partner Ida McClellan continued to manage said business and to carry it on in connection with the operation of the real estate which the parties owned, they deeming it to their disadvantage to liquidate their assets at that time; that on account of the extremely low price of live stock and the severe drouth at that time the parties interested faced a large loss if said business was liquidated at that time; that all parties interested consulted together regarding the continuance of the partnership affairs after the death of John B. McClellan; that Ai McClellan insisted that the business be carried on and not liquidated; that Ida McClellan insisted that the business be carried on and not liquidated; that Mary R. Maynard wrote to Ida McClellan to carry on the business in her behalf; that Stanton McClellan stated that it was satisfactory with him for Ida McClellan to continue the business, as did Blanche McClellan; that pursuant to the understanding and agreement between all of said parties interested in said estate the business of the partnership was carried on, managed, and controlled by the said Ida McClellan; that reports were made by her from time to time to the others interested in said patnership estate, and in March, 1935, Ai McClellan came to the farm and lived with Ida McClellan, helped her to carry on the business, advised in regard to selling property, helped care for live stock and assisted generally in carrying on the partnership business, and so continued until the appointment of an administrator; that Blanche McClellan, widow of John B. McClellan, lived in one of the houses on the partnership property and assisted in handling the business; that pursuant to the appointment and arrangement between the parties interested not to liquidate said partnership upon the death of John B. McClellan, all five of said parties signed a check for the purpose of paying funeral expenses of the said John B. McClellan from partnership funds, so that the operation of the partnership business would not be hampered by any claim from that source; that it was mutually agreed between all of the parties interested in said partnership estate that at the time of the death of John B. McClellan that the business should be carried on and not liquidated and pursuant to the said mutual agreement and relying upon the consent of all of said parties, and upon their acts, conduct and cooperation the

business was carried on until it was mutually agreed that an administrator be appointed to settle up the affairs of said partnership estate and that the real estate owned by said partnership be partitioned *ex parte*; that on or about November 16, 1937, L. E. Proffer was appointed administrator of said partnership estate by agreement of all parties interested, all parties interested signing said administrator's bond, and all parties interested proceeding *ex parte* and partition was thereafter begun for the partition of the real estate.

"All of the handling and management of the said partnership property by Ida McClellan as in this answer set out was induced by the agreement with, and the conduct and cooperation of all of said parties having an interest in said partnership estate."

Interrogatories 4 and 5 ask in substance if any of the personal property belonging to the partnership estate had been sold or disposed of after the death of John B. McClellan and before the appointment of the administrator, and if such had been sold, what disposition had been made of the money. In her answer, the appellant itemized the property sold and accounted for the expenditure thereof and then in justification of the sale of such property and the expenditure of the proceeds therefrom, appellant pled:

"All of the above expenditures were made by Ida McClellan under the authority, knowledge and consent of each and every one of the persons having an interest in said partnership estate and pursuant to the intention and understanding of all of said parties interested in said partnership estate subsequent to the death of John B. McClellan, said partnership estate having no creditors except the one hereinbefore mentioned who was paid pursuant to the arrangement between the parties. All of said expenditures were made for the benefit and the best interests of all parties interested in the partnership, and each of said parties received his or her proportionate benefit therefrom and all of which was done with the knowledge, acquiescence, approval, consent, and pursuant to the intention and understanding and wishes of each and every one of the persons interested in said partnership. All the expenditures were of such a kind and nature as were essential to preserve, conserve and to protect the property and interests of all of said parties; that no loss was incurred in the management of said partnership estate as aforesaid, but on the other hand vast profits were made for the benefit of each and every one having an interest in said partnership, the assets of said partnership were increased, and no debts were incurred against said partnership, and no demands have been filed in the Probate Court of Putnam County, Missouri, for any alleged claims for debts against said partnership estate."

We deem it unnecessary to set out in full answers to other interrogatories, because the above fairly present the questions for determination.

In a proceeding of this kind, the interrogatories and answers thereto constitute the pleadings in the case and definitely settle the issues involved. [Starks v. Lincoln, 291 S. W. 132; Spencer v. Barlow, 319 Mo. 835, 5 S. W. (2d) 28.] Therefore, we must look to the interrogatories and answers for the issues and determine from such what issues, if any, are properly raised. If no issues are properly raised, then the court was right in sustaining the motion for judgment on the pleadings; but if any issue or issues are properly raised, then the court committed error and such issues should have been tried by the court or a jury. [Sullivan v. Bank of Harrisonville, 293 S. W. 129; Baker v. Lamar, 140 S. W. (2d) 31; In re Fenn, 108 S. W. (2d) 369; Spencer v. Barlow, *supra.*]

Appellant first contends that the filing of the original affidavit to discover assets by the respondents and appellant filing a general denial thereto would raise an issue to be tried, but since, under the above rulings, the original affidavit and any answer filed thereto does not constitute the pleadings in the case, we rule this point against appellant.

The appellant next asserts that upon the death of one of the partners, John B. McClellan, his widow, heirs, and the only surviving partner, the appellant Ida McClellan, all being *sui juris,* and there being no creditors, all of said parties had a right to agree for the management and disposition of the partnership property in any manner they saw fit so long as there was no fraud or mistake. This general proposition is true in the estate of an individual. [Bell v. Bank, 138 Mo. App. 383; In re Landgraf's Estate, 183 Mo. App. 251; Griesel v. Jones, 123 Mo. App. 45.] But the respondents argue that those cases are not in point and the principle of law above announced has no application in a partnership estate, because the death of one partner operates as a dissolution of the partnership, and earnestly argues that under such circumstances the surviving partner cannot, under any circumstances, carry on the partnership business. They rely on the case of Roberts v. Hendrickson, 75 Mo. App. 484. That was a case where the surviving partner undertook to carry on the partnership business as had been done prior to the death of one of the partners, and the court properly held, under the facts in that case, that he could not carry on the partnership, make contracts, incur debts, and generally transact partnership business in such a manner as to bind the partnership estate. But in that case, the question of the sole and only heirs agreeing to his management of the partnership estate was not involved. The decision in that case under the facts was correct, but we do not consider it conclusive of the question now under consideration.

Respondents argue that "no amount of consent on the part of distributees could revive a partnership that death has dissolved." We do not understand appellant's position to be that *the partnership was*

*revived,* but rather her position is that the respondents are estopped to now assert that she is wrongfully and unlawfully withholding assets belonging to the old partnership, because they consented and agreed that no administrator be appointed at the time of the death of one of the partners and thereby force liquidation of the partnership estate at that time, and agreed that she, the appellant, not as administrator, but as the surviving partner, should manage and control the assets in the manner in which she alleges she did, and that she, having acted on such consent and agreement cannot now be convicted of wrongfully and unlawfully withholding assets of the partnership, as set out in the answers. We are here dealing with pleadings and not with evidence. We conclude that adult heirs to an estate, whether it be an individual or a partnership estate, may by their consent and agreement estop themselves from asserting that a surviving heir or partner has wrongfully and unlawfully withheld assets of such estate. Our Supreme Court has defined estoppel *in pais* as follows:

"Estoppel *in pais* arises where one by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other relies and acts upon such belief and facts so that he will be prejudiced if the former is permitted to deny the existence of such facts." [Randolph v. Moberly Hunting & Fishing Club, 15 S. W. (2d) 834, l. c. 839, 321 Mo. 995.]

While that is a general definition, and the facts there under consideration are not similar to the facts in this case, nevertheless we think the principles announced are applicable here. The substance of appellant's answers to the interrogatories in defense and justification of her management of the assets of the partnership estate after the death of one of the partners, is that she managed and controlled such assets by agreement and consent of all surviving heirs and parties interested in such assets; and that all such parties interested assisted and cooperated with her in carrying on and managing the assets of the partnership, and that in so doing, she relied upon the consent and agreement and acts and conduct and cooperation of said parties in the management of the same. If such allegations be true, then would not the parties agreeing thereto be estopped to later repudiate such an agreement and arrangement? We think so. This direct question does not seem to have been decided by any Missouri appellate court, but we find in other jurisdictions authorities holding that heirs of the deceased partner may by agreement become estopped to assert their claim against the surviving partner because of his management of the partnership assets. In the case of Maynard et al. v. Maynard et al., 147 Ga. 178, 93 S. E. 289, the Supreme Court said:

"We recognize the rule that, though a surviving partner is entitled to wind up the business of the partnership, he is not entitled, in the absence of any provision in the will of the deceased partner or in the

articles of the partnership agreement, to continue the business after the death of a copartner. While the surviving copartner had no right to continue the business as a going concern, still the devisees, having consented to the continuance of the partnership business as a going concern, are estopped from raising the issue that the money subsequently received on deposit should not be treated as a liability of the partnership."

Also, in 20 R. C. L., page 990, sec. 226, the doctrine is announced as follows:

"Where one partner dies and those interested in his estate are *sui juris*, they may agree with the surviving partners to permit their inherited shares in the firm property to continue to be used by the partnership."

In 47 C. J., page 1070, sec. 637, the same general principle is announced as follows:

"The widow and heirs of a deceased partner have the right and authority to agree with the surviving partner that their share in the firm property may continue to be used by the partnership, and the business of the firm continued under the original firm name." Citing a number of decisions from other jurisdictions.

However, respondents argue that even though that be true, appellant's answers plead only legal conclusions and not sufficient facts to constitute estoppel. We have quoted portions of appellant's answers to certain interrogatories and believe sufficient ultimate facts are pleaded to raise the question of estoppel. Evidence need not be pleaded.

"It has always been considered good pleading to state the ultimate facts in the petition. The evidence in support of ultimate facts is to be offered at the trial of the case." [Duff v. Eichler, 336 Mo. 1164, 82 S. W. (2d) 881.]

Other cases which distinguish between the pleading of ultimate facts and conclusions of law are Russell Grain Co. v. Wabash R. R. Co., 114 Mo. App. 488; Nichols v. Nichols, 134 Mo. 187; Glover v. Liverpool, London & Globe Insurance Co., 193 Mo. App. 489. We have read the cases relied on by respondents, but do not believe they rule the pleadings here involved.

Respondents also urge that even though they may be guilty of acts or representations which would estop them from complaining of the surviving partner's continued operation of the partnership estate, nevertheless, such acts of estoppel could not bind the later appointed administrator of the partnership estate, and would not estop him in this proceeding. We do not agree with this contention. If all the heirs interested in an estate, by their agreements and consent, estop themselves from asserting a right, which is here claimed, we conclude that the administrator of such estate would be estopped to assert claims in behalf of the heirs which they could not themselves assert. This,

of course, would not apply if there were creditors of the estate involved, but it seems to be conceded that there are none in this estate.

It must be kept in mind that we are discussing the pleadings in the case and are not, and cannot at this time, discuss the question of whether the evidence is sufficient to work an estoppel, or whether the expenditures were for the benefit of the partnership estate. Such matters must be determined by the trial court.

We conclude that appellant's answers to the interrogatories sufficiently raise the question of whether the heirs of the deceased partner agreed with and consented for the surviving partner to manage, control and handle the assets of the partnership after the death of one partner, and that such issue should be tried. It therefore follows that the court committed error in sustaining respondents' motion for judgment on the pleadings, and will necessitate reversing and remanding the cause for further proceedings in accordance herewith. It is so ordered. All concur.