RALPH L. ALEXANDER, Administrator of the Estate of ALVIN JENS GLASGOW, DECEASED, Plaintiff-Appellant, v. IRVIN GLASGOW, Defendant-Respondent, IVAH GLASGOW, THIRD PARTY Defendant.— 270 S. W. (2d) 161.

Springfield Court of Appeals.  Opinion filed July 21, 1954.

R. E. Ausmus, for appellant.

782

*Ford & Ford,* and *Jones & Jones,* for respondent.

BLAIR, J.—The petition in this equity suit was filed in Dunklin County, on November 19, 1948. The case went to Mississippi County on change of venue. Judgment was entered against plaintiff-appellant, (hereinafter called plaintiff) and he was granted an appeal to the Supreme Court of Missouri.

On April 28, 1953, the Supreme Court of Missouri, of its own motion, ordered that the case be transferred to the Springfield Court of Appeals, because it did not appear that the judgment exceeded $7500.00. We shall refer to defendant-respondent as defendant. Ivah

Glasgow, third party defendant, apparently did not appeal. She appeared to have sympathized with plaintiff, and, in fact, with plaintiff's attorney, who represented her as third party defendant.

The first paragraph of plaintiff's brief concisely states the facts, as follows:

"This is a suit, in equity, brought by the plaintiff-appellant Ralph L. Alexander, as Administrator of the Estate of one Alvin Jens Glasgow, deceased, and against Irvin O. Glasgow, the defendant-respondent (hereinafter referred to as plaintiff and defendant, respectively), praying for the dissolution of a partnership, an accounting of partnership property and assets, a receivership and distribution of said partnership property and assets to the parties in interest in accordance with their respective rights therein."

There is no oral testimony and the facts must be determined from the pleadings and the interrogatories. Defendant and his brother, Alvin Jens Glasgow, owned three drug stores in Kennett, Missouri, and another drug store in Arbyrd, Missouri. The relationship between the two brothers was very close and each one of the partners was unusually fond of the other. Alvin Jens Glasgow, herein called the deceased, one of the partners, died on September 15, 1939. The three drug stores in Kennett and the one at Arbyrd were closed for the three days after the death of deceased.

We must admit that the usual proceedings were not observed in this case. No one was appointed as administrator by the Probate Court of Dunklin County, since the deceased died intestate. The widow's portion of deceased's estate was not set off to her. Instead of the usual probate proceedings, which were not observed, they attempted to follow these unusual proceedings, as directed and advised by an attorney-relative of the widow of deceased, in order to save time and expenses. The surviving partner was apparently unusually kind and thoughtful of deceased's widow, and the children of his deceased brother, who was his former partner. After the death of Alvin Jens Glasgow, on September 15, 1939, defendant Irvin O. Glasgow reorganized the drug business as formerly carried on by the two brothers, and deceased's widow, by the same name, was made a partner with defendant, and they continued such partnership relation until February 15, 1944, on which date said partnership was dissolved and defendant purchased the interest of said widow of deceased, and paid her therefor the sum of $17,745.00, since which time said businesses have been conducted by the defendant claiming to be sole owner.

In the meantime, deceased's widow had been able to educate her four children in the local schools of Kennett and put them through the State University at Columbia, Missouri. It is hard to imagine better treatment than that accorded the deceased's widow by his former partner, if she was so treated. Yet, in so doing, while not

following the law in Missouri applicable to such cases, it is hard to imagine how any business partner could do more for his deceased partner's widow, than the defendant did, and as he was said to have done.

It was not until after all of deceased's children had been educated in the local schools at Kennett, Missouri, and at the State University at Columbia, Missouri, where the widow went with her children, that proceedings were instituted on the theory that defendant should have had the affairs of his deceased partner go through the Probate Court of Dunklin County, and that the contract with the widow, testified to by each of them, was not sufficient.

Deceased died on September 15, 1939, and it was not until November 19, 1948, or more than nine years afterward, that it was discovered and alleged in a petition that, instead of making a formal contract with deceased's widow on September 18, 1939, the affairs of such deceased's partner should have been settled by the Probate Court of Dunklin County, and the legal advice of the attorney-relative of deceased's widow to expedite matters and to save time and costs, could not safely be followed in Missouri.

We are faced with the question of whether or not the steps actually taken were sufficient to relieve defendant of liability at the time this suit was filed. There is no question in our minds that the estate of the deceased partner should not have been handled in the way defendant and the deceased's widow undertook to handle it. The question that disturbs us is whether or not defendant and the widow of deceased should have submitted his estate to the Probate Court of Dunklin County anyhow; and since they did not do so, can this suit be maintained at the present time.

Plaintiff cites Bell, et al. v. McCoy, 38 S. W. 329, 136 Mo. 552, decided by the Supreme Court of this State in 1896. There, a surviving partner surrendered a leasehold interest belonging to the firm and took another lease in his own name, without a legal settlement and accounting of the partnership business. The rights of deceased partner were not promptly asserted and no attempt was made by the surviving partner, as here, to protect the rights of the widow and children of the deceased. What is said in the Bell case is doubtless the law where the rights of the widow of the deceased partner are ignored.

Paragraph 5 of plaintiff's petition makes the allegation that the estate of the deceased "has not received any accounting from defendant or any share of the money due said estate from the operation of said partnership business, although since the date of the death of the said Alvin Jens Glasgow large sums of money have become due the estate of the said Alvin Jens Glasgow therefrom." Such allegation is merely the language of the pleader without any basis in the facts.

We do not regard the case of Bell v. McCoy as authority where the widow of the deceased partner accepted the offer of the surviving partner, and was paid the assumed full value of her deceased husband's interest in such partnership property. We do not think the rule laid down in the Bell case is at all applicable to the facts in this case. We have carefully studied all the cases cited by plaintiff under II-A of his brief, and without reviewing all of the facts in these cases, are satisfied that they are not applicable to the facts in this case.

Plaintiff seems to place great reliance upon Tufts v. Latshaw, 172 Mo. 359, 72 S. W. 679, to show that the facts in the Tufts case are not controlling in this case, we only have to set out that which Judge Burgess said, in disposing of that case, to wit: ''The law is well settled that, when a person who holds property in a fiduciary capacity mixed his own property with it so that it cannot be separated nor the amount of each ascertained, the whole becomes, both at law and in equity, the property of the trust estate.''

Among the cases cited by plaintiff, under II-A of his brief, is the case of Maynard v. McClellan, 156 S. W. (2d) 770. That is a Missouri case written by Judge Cave, of the Kansas City Court of Appeals. That case is sufficient authority to justify the trial court in holding that, where the surviving partner at all times respects the rights of the widow of the deceased and immediately takes her into partnership with all of the assets and liabilities of her deceased husband as such partner, he can do so without liability, especially where there are no other persons interested in such partnership as creditors. This is especially true where such surviving partner makes an apparently fair contract with such deceased's widow and protects her rights and those of the children of the deceased.

When this is done it is difficult to understand why the widow would join with plaintiff, almost ten years after the death of her husband, in charging defendant with misconduct. The only explanation, which occurs to us, is that she was over persuaded by her later friends and, at their solicitation, turned against defendant and charged him in her third party complaint with misconduct, as charged in the petition itself.

In the Maynard case, previously considered by us, it is well said: ''If all the heirs interested in an estate, by their agreements and consent, estop themselves from asserting a right, which is here claimed, we conclude that the administrator of such estate would be estopped to assert claims in behalf of the heirs which they could not themselves assert. This, of course, would not apply if there were creditors of the estate involved, but it seems to be conceded that there are none in this estate.''

In Goodson v. Goodson, 140 Mo. 206, 41 S. W. 737, our Supreme Court has also well said: ''But plaintiff failed to avail herself of this statutory remedy, and, while we do not wish to be understood as hold-

ing that the mode provided by statute is exclusive under all circumstances, there ought to appear some very cogent reason why it should not be so held, before the administrator of the personal estate of the deceased partner should be permitted to proceed in equity to compel an accounting and settlement of the partnership; and especially when the lapse of time from the dissolution of the partnership by the death of John E. Goodson, Jr., on the 19th day of August, 1890, that letters of administration were granted plaintiff upon the estate on the 5th day of September, 1890, and the death of the surviving partner, John E. Goodson, Sr. which occurred in September, 1892, and the further fact that this suit was not begun until the 28th day of October, 1893,—more than three years after the death of John E. Goodson, Jr., and more than one year after the death of John E. Goodson, Sr.,—are taken into consideration.''

Nearly four years elapsed from the time deceased's widow formed a partnership with defendant for operation of the drug stores operated by the surviving partner and his deceased's brother, which terminated in the surviving partner purchasing the interest of the widow; and it was nearly nine years after the death of the deceased partner before this suit was filed in which the widow, as third party defendant, eventually joined with plaintiff and agreed to the allegations of plaintiff's petition making serious charges against defendant.

Under the authority of the case cited from the Kansas City Court of Appeals and the cases cited from out Supreme Court, part of which are above quoted, we think the widow of deceased, after accepting all of the kind acts of defendant, is estopped from charging misconduct on his part, and that plaintiff himself should be estopped from making those charges against defendant at this late date.

Under all of the circumstances of this case and the cases cited, we have come to the conclusion that the trial court correctly decided that the defendant should prevail.

The judgment of the trial court is approved by us and it is therefore affirmed. It is so ordered. *McDowell, P. J.,* and *Stone, J.,* concur in result.