**In the Matter of the ESTATE of George W. BAKER, Deceased.**

**Roy BAKER, Petitioner-Respondent,**

**v.**

**Alta BAKER, Administratrix, Defendant-Appellant.**

**No. 8038.**

Springfield Court of Appeals.

Missouri.

July 20, 1962.

Sharp & Hatley, William B. Sharp, Malden, for defendant-appellant.

Riddle, Baker & O'Herin, Malden, Bock & Jones, New Madrid, for petitioner-respondent.

RUARK, Presiding Judge.

This is an appeal by the administratrix-defendant from an adverse judgment rendered in a discovery proceeding.

In 1955 George W. Baker died intestate, leaving his widow, Alta, and various children, including sons Roy and Clifford. The widow was appointed administratrix. The inventory shows a quantity of real estate but no personalty.

On August 8, 1960, the son Roy, whom for convenience we will refer to as the petitioner, filed amended affidavit charging the administratrix with withholding and concealing certain personal assets and praying that citation be issued to compel her to answer questions under oath. We do not find the citation in the files, but the record shows it was issued returnable October 25. Upon disqualification of the probate judge, the matter was transferred to the circuit court.

On *November 22* the cause was set for trial on January 10, 1961. Thereafter, on the same day (November 22), defendant-administratrix filed answer which was in effect a general denial of the petitioner's affidavit. Thereafter (still November 22) the petitioner filed interrogatories. The interrogatories with which we are now concerned dealt with (a) a note from J. E. Hollcroft and Myrtle Hollcroft to George Baker, dated January 4, 1951; (b) a bank account at the State Bank of Bernie; and (c) an automobile.

On January 10, 1961, the parties appeared before the court. No answers to the interrogatories had been filed, but the court proceeded to hear evidence. Concededly no one asked for a jury. The petitioner put into evidence an instrument entitled "Vendor's Lien Note" given at Weslaco, Texas, on January 4, 1951, and payable at the First National Bank of Weslaco. Said note was given by J. E. Hollcroft and Myrtle Hollcroft, who therein promised to pay to G. W. Baker $10,500, in monthly installments of $75, and stated the note was given as part payment for certain land (legal description set forth) in Hidalgo County, Texas, which land was "this day conveyed to the undersigned, by G. W. Baker and wife, Alta Baker." The note further recites that as further security a deed of trust is given concurrently therewith.

In reference to the bank account, petitioner called the cashier of the State Bank of Bernie, who produced under subpoena duces tecum the ledger sheets of a checking account headed "G. W. or Alta L. Baker," commencing with a first deposit in the amount of $643.67, of date September 19, 1953, and continuing to February 20, 1958. He identified as records of the bank some nine deposit slips. The first one (September 9, 1953) reflected a deposit in the amount of $643.67 to the credit of "G. W. Baker or Alta L." Another deposit receipt dated September 29, 1953, showed a deposit of $1500 made in the same manner. The following receipts simply reflected deposits by "G. W. Baker." The witness testified that when the account was opened, G. W. Baker appeared in person with his wife, Alta, and a card was made out. Both of them (husband and wife) had to sign the card. He said that he opened the account for them himself and that the initial deposit slip was in his (the cashier's) handwriting. (Although he was not asked about it, each of the following deposit slips *appears* to be in the same handwriting.) The witness obviously understood and was of the opinion that this was a

"joint" account. He repeatedly referred to it as such. When asked to explain why the deposit slips following the first two were made out in the name of "G. W. Baker" only, he said, "It is not necessary to show it, the two after you have a joint account established." Referring to the custom of the bank, "After we open a joint account and the original deposit slip is the only one that is necessary to show it, and G. W. or Alta Baker and—" (interrupted by objection). "The original must show it and it is G. W. or Alta and it is posted to the ledger account and the ledger account will show it too, and then any deposits thereafter—any bank will tell you that you don't have to show the two, but it is posted to that joint account, G. W. or Alta L. Baker." "Yes, sir, it is our practice." He said that the account in question was the only one which G. W. or Alta Baker had in the bank; that all deposits went into that one account; that he (or the bank) never did receive instructions to put any money in any other account.

As to the signature card, the witness said it had been mislaid in the bank and he had been unable to find it, so he could not produce it. He did not say, *and nobody asked him*, what the missing card contained, whether it contained a survivorship provision, a tenancy in common arrangement, a tenancy by entirety clause, a mere permission to check, or what. Nor was he asked to produce the *form* of card which was signed.

Defendant-administratrix then took the stand and identified as Exhibit 1 an original deed of conveyance of date May 29, 1945, wherein were conveyed to "G. W. Baker, and wife, Alta Baker," of Hidalgo County, Texas, the identical lands described in the vendor's lien note hereinbefore mentioned. *After* the witness had identified the deed, the petitioner objected, "I object to that, to this witness testifying to a contract to which G. W. Baker was a party, and he is now dead."

Thereafter the administratrix was handed defendant's Exhibit 2, which was a deed of trust given by J. E. Hollcroft and wife, Myrtle Hollcroft, of date January 4, 1951, the same date as the vendor's lien note aforementioned, to secure an indebtedness to "G. W. Baker and wife, Alta Baker." The deed of trust described the note aforementioned and conveyed the same land. The administratrix testified that the note therein described was the same as petitioner's Exhibit A. Thereupon petitioner objected "for the reason G. W. Baker is a party to that instrument and is now dead." The objection was overruled and defendant then offered the whole exhibit. Upon such offer no ruling was made, but the witness interposed, "That is what the lawyer said, it didn't make a bit of difference in the world in Texas." That was objected to on the ground it was not responsive and was a conclusion, and there the testimony ended. There was no evidence pro or con in respect to the charge concerning the automobile. Thereupon the court took the matter under advisement.

On March 7, 1961, the petitioner, Roy Baker, filed a brief. This evidently set the administratrix' attorney to thinking that he had better file answers to the interrogatories, and this he did on March 13, 1961. The substance of these answers was:

(a) The note from the Hollcrofts was owed to deceased and his wife jointly and since the death of G. W. Baker the amount paid on it was $4950.

(b) The account at the State Bank of Bernie was a joint account.

(c) Deceased owned no automobile. A Plymouth automobile belonging to Clifford Baker was "listed" in the name of George W. Baker. Said automobile had been delivered to Clifford Baker. (The answer leaves in doubt whether or not the administratrix had had actual possession or control of the automobile.)

On April 25, 1961, the court filed a judgment which recited that Alta Baker

failed to answer the interrogatories until after the hearing on January 10, 1961, "and filed same late without leave of court"; that on January 10, the trial date, the parties went to trial and neither required a jury; that at his death George W. Baker was the owner of the Hollcroft note and that the administratrix-widow had concealed and unlawfully withheld it; that at the time of his death George W. Baker was the owner of the bank account at the State Bank of Bernie in the amount of $5214.63 and that the administratrix-widow had withdrawn and concealed and unlawfully withheld it; that George W. Baker was the owner of a Plymouth automobile which administratrix had concealed and unlawfully withheld; that the administratrix had failed in her trust as administratrix and converted assets to her own use and was thereby removed as administratrix. In addition to removal, the administratrix was ordered forthwith to deliver the aforementioned property to a new administrator.

It is appellant's first complaint that she was denied the due process of a trial of the issues. Her attorney contends that since the statute (V.A.M.S. § 473.343) provides the right of oral examination *prior* to interrogatories, she was justified in waiting to file answers to the interrogatories until that examination was had, and that she presented herself for such examination on January 10, 1961 (the date set for hearing).

It is the petitioner-respondent's position that in failing to file answers to interrogatories by trial date the administratrix was in default. Although we are not certain, it would appear from the language of the judgment that the court took this view.

■ The procedures set up for discovery proceedings comprise a code of their own.

Briefly, the statutes (V.A.M.S. §§ 473.340, 473.343, 473.347, 473.350) provide for the following steps:

(1) An affidavit is filed and citation is issued.

(2) The defendant may admit or deny the allegations of the affidavit.

(3) If defendant denies the allegations of the affidavit, the petitioner has the *right* to subject the defendant to oral examination.

(4) The petitioner files interrogatories.

(5) The defendant files answers to such interrogatories.

(6) Trial is had on the issues thus raised. Missouri Probate Law and Practice, Maus, vol. 4, § 876, et seq.; State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446, 449.

■■ As to the right of the petitioner to place the defendant under oral examination [(3) above], that provision is still carried in the statutory procedure (V.A.M.S. § 473.343), presumably because the examination may be an aid in framing the interrogatories. But the petitioner may waive this right. And it can be seen that he may wish to do so when the dead man's statute (V.A.M.S. § 491.010) is involved. Maus, supra, § 877; In re Weingart's Estate, Mo.App., 170 S.W.2d 972, 977. Although it might seem better practice to require the signification of this waiver by some sort of notice to court and counsel, we think the act of filing of interrogatories on November 22 was in and of itself a notice of such waiver and that defendant should have taken notice of this fact.

However, there is a more important consideration: Under the statutes and *all* of the decisions the issues are framed by the interrogatories and the answers thereto.[1]

1. Missouri Probate Law and Practice, Maus, vol. 4, § 878; Maynard v. McClellan, 236 Mo.App. 352, 156 S.W.2d 770, 773; Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28, 32; Allmon v. Allmon, Mo. App., 306 S.W.2d 651, 654; Covey v. Van Bibber, Mo.App., 311 S.W.2d 112, 113; In re Decker's Estate, 348 Mo. 32, 152 S.W.2d 104; In re Weingart's Estate, Mo.App., 170 S.W.2d 972, 977, 978.

In ex parte Fowler, 310 Mo. 339, 275 S.W. 529, 533, it was said:

"In the absence of an admission, then, there is no case until interrogatories are filed, and answer made thereto. Under the statute, it is then, and then only, that we have issues to be determined by a jury or by the court. * * * Absent triable issues, and a trial, the court is without power to enter a judgment or order. * * If an adjudication is made, and a judgment entered, it is a nullity. It is not due process of law."

Unless, therefore, the defendant can be considered in default, no trial on the merits could have been had because the issues had not been made up.

■ But *when* should the answers to interrogatories be filed? What is the time limit? The statute fixes no time, and no case which we have found deals with that problem. It is our conclusion that, since the statute does not fix a time, it is *the duty of the court* to fix a time for answering. The court did not do so in this instance (nor did any citation so far as we can find in the record). Bearing in mind that the interrogatories and the answers thereto make up the issues, the court should be zealous that the parties are apprised of the time and occasion when the issues are to be made up. In re Waters' Estate, Mo.App., 153 S.W.2d 774, 775.

■ Referring back to the statutes, *if* the defendant fails to file answers within the time limited, the court is not powerless. It can commit the defendant to jail until such answers are filed. (V.A.M.S. § 473.347) The situation, although not exactly similar, is somewhat analogous to a garnishment proceeding after judgment.

In such a case, where the interrogatories had not been answered and judgment was taken, this court in Chenoweth v. La Master, Mo.App., 342 S.W.2d 500, held that the judgment rendered on a supposed default was improper and remanded the case for proper proceedings, this for the reason that the real issues contemplated by the proceeding had not been made up and heard.

■ It is our conclusion that the trial (of the issues?) and the judgment on the same was premature; that there was no real trial as contemplated by the statute; and hence the judgment must be reversed and remanded for a new trial.

■ Nor are we certain as to how the trial judge considered the belated answer. In respect to the automobile there was *no* evidence presented. If the court considered the answer as a pleading of that issue, the defendant should have been permitted to make proof on that issue. If he considered it solely as evidence, such was improper because it had not been offered in evidence. (See Covey v. Van Bibber, Mo.App., 311 S.W.2d 112, 115; Starks v. Lincoln, 316 Mo. 483, 291 S.W. 132, 133). Since the case must be retried, we suggest that since the answer shows that legal title to the automobile was in the deceased, the burden is squarely upon the administratrix to prove the affirmative, viz., that the defendant actually had no beneficial interest therein. Allmon v. Allmon, Mo.App., 306 S.W.2d 651, 654.

As to the bank account:

■ Whether a deposit in two names is a joint tenancy or a tenancy by the entirety usually depends upon the intention of the parties.[2] Whether the deposit is made in husband *and* wife or in husband *or* wife does not seem to be the controlling

---

2. 7 Am.Jur., Banks and Banking, §§ 425, 426, pp. 299–301; Banks and Banking, Michie, vol. 5A, ch. 9, § 46, p. 115; 64 A.L.R.2d, § 31, p. 80; Longacre v. Knowles, Mo., 333 S.W.2d 67, 70; Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, 1081; Yates v. Richmond Trust Co., Mo.App., 220 S.W. 692, 693; Craig v. Bradley, 153 Mo.App. 586, 134 S.W. 1081, 1082; Ray v. Ray, Mo.App., 336 S.W. 2d 731, 737; see Dalton v. American National Bank, Mo., 309 S.W.2d 571, 579.

factor. In Longacre v. Knowles, Mo., 333 S.W.2d 67, it was held that in a relationship between uncle and nephew, where notes and bonds were "or," the use of the disjunctive was incompatible with a joint tenancy.[3] And in those cases where the deposit arrangement carries *no provision for survivorship* as provided in Section 362.-470, V.A.M.S., a deposit in husband *or* wife creates no presumption of joint tenancy. Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, 1081. On the other hand, a deposit arrangement in the form of the statute (providing for survivorship) raises a presumption in favor of the joint account. Melinik v. Meier, Mo.App., 124 S.W.2d 594, 597. And a deposit to husband *or* wife where the deposit or signature card shows right in the survivor raises a presumption of joint tenancy or estate by the entirety. Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, 218; Hanebrink v. Tower Grove Bank & Trust Co., Mo.App., 321 S.W.2d 524. Of course, the estate by the entirety continues in personal property, and a deposit made to husband *and* wife, regardless of lack of the survivorship provision, will be presumed to be a tenancy by the entirety.[4]

■ We would think that once a single deposit account has been established in a bank, in whatever form it might be, then *in the absence of any evidence showing to the contrary,* subsequent deposits made in the same bank, without indication of intention that they shall be considered or credited differently, would justify the inference that the depositor intended them to become a part of the account originally established.

As to the Hollcroft note:

■ Appellant says that a tenancy by entirety follows the proceeds of the sale of the Texas property. We would say that in the absence of evidence indicating a contrary intention by both parties a tenancy will be presumed to follow the proceeds of the sale of entirety property.[5]

Respondent says that the defendant did not prove an entirety in the land because the deed which showed title in the husband and wife was identified in violation of the dead man's statute. In that connection we note that the objection to such identification came *after* the witness had answered. There was no claim that the answer came too fast to permit opportunity to object, nor was there any request to strike such testimony. (See Hamiltonian Federal Savings & Loan Ass'n v. Wendling, Mo.App., 199 S.W.2d 29, 33; see also Stephenson v. Stephenson, 357 Mo. 8, 171 S.W.2d 565, 568)

Both parties ignore the question of whether there *was* an original entirety and the question of whether or not such note had a fixed legal status in regard to interest and ownership when it was brought into this state. No attention is paid to the question of whether the Texas community property law is applicable.[6]

It is not the duty of the appellate courts to brief the cases for the litigants' attorneys. In this opinion we have attempted to point out some procedures and some of the phases of the law which may be applicable or might be involved on a retrial

---

3. See also Princeton State Bank v. Wayman, Mo.App., 271 S.W.2d 600; Hilke v. Bank of Washington, Mo.App., 251 S.W.2d 963(4); but compare Conquerer Trust Co. v. Craig, 204 Mo.App. 650, 218 S.W. 972, 973(1).

4. State Bank of Poplar Bluff v. Coleman, 241 Mo.App. 600, 240 S.W.2d 188, 190; Craig v. Bradley, 153 Mo.App. 586, 134 S.W. 1081, 1082; Cullum v. Rice, 236 Mo. App. 1113, 162 S.W.2d 342, 344.

5. Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55, 59; Ray v. Ray, Mo.App., 336 S.W.2d 731, 737; Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, 37, 77 A.L.R. 782; Johnson v. Johnson, Mo.App., 268 S.W.2d 439; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, 219.

6. See V.A.T.S., civil statutes, Art. 4619, and annotations at notes 6, 7, 9, 120, 122; Art. 2578; Texas Probate Code, §§ 45, 46, V.A.T.S.

of this case, in the hope it will be of some assistance. All we can say is that if counsel wish to sit on their assurance and rely upon "presumptions" and fail to produce evidence when such is readily available, they run the risk of rendering a disservice to their clients.

The judgment is reversed and remanded.

McDOWELL and STONE, JJ., concur.