R. W. HORNSEY, EXECUTOR OF THE ESTATE OF E. B. CICARDI, DECEASED, RESPONDENT, v. LEO C. DE VOTO, APPELLANT.*—16 S. W. (2d) 630.

St. Louis Court of Appeals. Opinion filed May 7, 1929.

\*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2982, p. 999, n. 22; p. 1002, n. 34; Gifts, 28CJ, section 82, p. 676, n. 33.

*James Booth* and *Anderson, Gilbert & Wolfort* for appellant.

*C. Lew Gallant* and *Karl M. Vetsburg* for respondent.

SUTTON, C.—This action for the discovery of assets was commenced in the probate court, whence it went on appeal to the circuit court. The petition charges that defendant, Leo C. DeVoto, has concealed and is wrongfully withholding $1139 in money and eleven notes dated June 15, 1926, each for the sum of $200, and each signed by Viola Skobel, the property of the estate of deceased. The answer to the petition denies that defendant is withholding any money or notes belonging to said estate. In his answer to the interrogatories filed, defendant says that he obtained possession from deceased on or about September 25, 1926, of sixteen notes for $200 each, dated June 15, 1926, signed by Viola Skobel, and made payable to and endorsed by deceased; that seven of said notes had been paid to him, and that he now has in his possession or under his control nine of said notes; that he personally paid no consideration for said notes; that said notes were given to him by the deceased in consideration of love and affection and debts that deceased owed defendant's father; that said notes were delivered to him by deceased for defendant and his two sisters; that the delivery was absolute, and all right, title, interest, and ownership passed with the delivery of said notes to defendant.

Upon the trial anew in the circuit court, without a jury, the court found the issues in favor of plaintiff, and gave judgment that plaintiff have and recover of defendant $1100 and the eleven notes for $200 each described in the petition. Defendant appeals.

On June 15, 1926, the deceased sold a garage which he owned in St. Louis to Viola Skobel, who, for a part of the purchase price, executed to deceased twenty promissory notes for $200 each. These notes were made payable successively on the 15th day of each month following the date of their execution, the last one falling due February 15, 1928. The deceased endorsed the notes and turned them over to the Franklin Bank in St. Louis for collection. He was at the time a customer and depositor of the bank. He received from the bank a receipt for the notes showing that the bank had received the notes for collection. This receipt was written in the back of his pass book. At the same time the notes were listed in the collection record of the bank. The notes due July 15, August 15, and September 15, 1926, were collected by the bank, and the amounts collected were entered on the books of the bank to the credit of the deceased. On October 7, 1926, the remaining seventeen notes were turned over by the deceased to the defendant. This transaction occurred at the

bank. Upon delivery of the notes to defendant, he delivered them to the bank for collection, and received a receipt therefor, which was written in the back of his pass book, showing that the bank had received the notes for collection. At the same time the collection teller made an entry in his collection record showing the transfer of the notes from deceased to defendant. The bank afterwards collected seven of the notes, and entered the amounts collected in its books to the credit of the defendant. The last collection was made, as shown by the books, on April 18, 1927. When the notes were delivered to defendant, they were stricken from deceased's pass book, and a notation was made in the pass book, showing that the notes were returned to him, by the collection teller.

John H. Sills, vice-president of the Franklin Bank, produced by defendant, testified:

"On October 7, 1926, Emmanuel B. Cicardi and Leo DeVoto came to me at the bank, and Mr. Cicardi said, 'I have some notes for collection. I wish to give them to Mr. DeVoto.' I then went with Mr. Cicardi and Mr. DeVoto to the collection teller and got what notes there were and handed them to Mr. Cicardi, and he gave them to Mr. DeVoto. Mr. DeVoto then endorsed the notes, and gave them back to me, and Mr. DeVoto and Mr. Cicardi and I went to the collection teller and he wrote here as indicated on the collection record, in the presence of Mr. Cicardi. When Mr. Cicardi obtained the notes from me he gave them to Mr. DeVoto. Mr. DeVoto took the notes and endorsed them, by writing his name on the back, and gave them back to me. The notes had been previously endorsed by Mr. Cicardi. Mr. DeVoto endorsed the notes, and put them in the bank for his account. A pass book was given to him with the notes entered in the back of the pass book, which is the collection receipt of the bank. Mr. DeVoto placed the notes in the bank for collection, and as they were paid they were placed to his credit."

. Thomas A. Riske, produced by defendant, testified:

"On October 7, 1926, I had been in charge of the collection department of the Franklin Bank, but on that particular day I wasn't actively engaged in it, but it was more or less under my supervision. The Skobel notes were left at the bank for collection by Emmanuel B. Cicardi with me in July, 1926. On October 7, 1926, Mr. Sills, vice-president of the bank, and Mr. DeVoto and Mr. Emmanuel B. Cicardi came up to the window, and Mr. Sills requested that the notes be taken from the files and delivered to him. I took the notes from the files and delivered them to Mr. Sills in the presence of Mr. Cicardi. They turned around and walked a short distance to where there was a desk, and then Mr. Cicardi and Mr. DeVoto had some conversation about these notes. I did not hear the conversation. When they returned to the department the notes bore the endorsement of Leo C. DeVoto. When they were left there first they were

endorsed by Emmanuel B. Cicardi. Shortly after DeVoto endorsed the notes, they were delivered back to me. I think they were delivered to Mr. Sills by Mr. DeVoto. Mr. Sills brought them to the teller's window and said, 'Mr. DeVoto gets credit for these notes. They now bear his endorsement.' Mr. Cicardi was present at the time. This about completed the transaction, and I made the necessary notations in the record, and inserted the name of the new endorser. The entries that had originally been made in the back of Mr. Cicardi's pass book were scratched out and marked 'returned.' The collections afterwards made on the notes by the bank were credited to Leo DeVoto's account. None of the proceeds of the notes were ever paid over to Mr. Cicardi, and he never made any demand for the proceeds that I know of.''

Louis Cicardi, a brother of deceased, produced by defendant, testified that after deceased sold his garage he told him that he had sold his garage, and made a settlement with his wife, and wanted to pay off all his old debts; that he said, ''I owe Leo DeVoto's father some money, and I want to pay him;'' that he wanted to give witness the Skobel notes for his indebtedness to witness; that witness told deceased he did not want the notes, and that the deceased then said: ''I will take them to Leo;'' that deceased afterwards told witness that he had given the Skobel notes to Leo.

Mrs. Meta Cicardi, the deceased's widow, produced by plaintiff, testified that she had a conversation with Leo DeVoto on November 18, 1926; that she asked him about these Skobel notes, and asked him if he would turn the money and notes over to her; that he left his office, and then came back and gave her a check for $100, and told her that when she endorsed it to do it in a certain way; that she endorsed the check in his presence, ''on a/c of Oct. Skobel note;'' that this was $100 of the $200 that was supposed to be collected for the October note; that she had a further conversation with DeVoto after her husband's death, and in that conversation demand was made by the executor for the notes and money collected, and that DeVoto said he wouldn't turn them over because deceased owed his father some money.

Mrs. Cicardi's testimony as to the latter conversation was corroborated by the testimony of the executor, and also by the testimony of her son.

Defendant testified that he had a conversation with Mrs. Cicardi on November 18, 1926; that she came to his office and said she was needing some money to pay hospital bills with, and wanted a loan of $100, and that he gave her his personal check for that amount; that there was nothing said about the Skobel notes in that conversation; that he did not see her write any endorsement on the check, and that the endorsement which she put on the check was not put on it in his presence; that he did not authorize any one to put that endorsement

on the check; that he did not know the endorsement was on the check until he got the check back; that he had a conversation with Mrs. Cicardi and the executor after the death of Mr. Cicardi; that they asked him for the notes and money collected on the notes, and that he told them that Mr. Cicardi had given them to him on account of an obligation that Mr. Cicardi owed defendant's father.

Defendant's testimony relative to his transaction with Mrs. Cicardi on November 18th, when he gave her the check for $100, was corroborated by the testimony of Louis Cicardi.

Mrs. Cicardi was married to the deceased in April, 1923. He had no children. Defendant is his nephew. The amount of deceased's estate at the time of his death was not shown. It appears, however, that he inherited from a relative, in January, 1922, $16,000, and that he had very little property prior to that time. Defendant's father died in September, 1919. He left no estate at his death. On July 11, 1924, deceased made his last will, in which he devised and bequeathed to his wife his entire estate, both real and personal. He died on February 8, 1927, and his will was thereupon duly admitted to probate.

Mrs. Cicardi was permitted to testify, over the objections of defendant, that on or about October 1, 1926, she had a conversation with her husband in which he said, "I am not living in St. Louis, and I can't run around and take care of the Skobel notes. I will turn them over to Leo DeVoto for collection." This testimony was objected to by defendant on the ground that the conversation between the witness and her husband was privileged, and on the further ground that what the deceased said was not said in the presence of defendant, and not binding on him.

A. F. Karte was permitted to testify, over the objections of defendant, that he had a conversation with the deceased on October 20, 1926, in which deceased remarked that he had sold his garage, and that he didn't get all his money out of it, and that he left some notes with his nephew for collection. This testimony was objected to by defendant on the ground that the deceased said was a self-serving declaration, and not binding on the defendant.

The admission of the testimony objected to as above indicated is assigned by defendant here as reversible error. Plaintiff concedes the incompetency of the testimony, but says its admission was harmless because the case was tried before the court without a jury.

Plaintiff relies on the rule announced in Cornice & Roofing Co. v. Trust Co., 146 Mo. App. 36, 123 S. W. 490, as follows:

"It is to be remembered that this was a case which was tried before the court without a jury, and the same strictness and particularity in testing the correctness of the action of the judge in the admission and exclusion of testimony is not applied in cases de-

termined by the court as in cases tried before a jury. It is to be presumed that even if a court admits some evidence that in a trial before a jury would not be relevant or competent or the best evidence, that the weight of that testimony is determined by a judge learned in the law and in the application of the law to the facts in evidence. Such is not the case when the trial is before a jury, which can only know of the competency, relevancy and materiality of evidence, by its admission by the court. When the court admits it, the jury is bound to take it as relevant and competent. When the court, without a jury admits it, it does not follow that he is bound by it as relevant or competent; that is to say, his subsequent judgment may show that he has not been led into error by it. We do not mean to say that a court, in disregard of all rules of evidence, can admit everything or exclude everything offered; but within reasonable bounds and where no obvious error is committed, a court, trying a case, a jury being waived, has much more latitude in the admission and exclusion of evidence than when a case is tried and is to be determined by a jury. We think the court committed no reversible error in the acceptance of the evidence on this point."

This rule has peculiar application in equity cases, whence it seems to have had its origin. The reason of the rule as applied in equity cases is stated by our Supreme Court, in Lowe v. Montgomery, 11 S. W. (2d) 41, as follows:

"However, it has been stated many times that ordinarily judgments in equity are not reversed, or that rarely is a judgment in equity reversed, because of erroneous rulings in admitting or excluding evidence, for the reason that the whole record is before the appellate court, and the appellate court will review the evidence, excluding what is incompetent, and consider what is competent, and make its own findings."

This reason of the rule can afford no basis in support of the rule as applied in a suit at law. Even in equity cases, the rule does not always preclude a reversal. This is shown by what was said in Russell v. Sharp, 192 Mo. 270, 91 S. W. 134, quoted by the court in its opinion in the Lowe case, as follows:

"But as it is the rule in this court to review the evidence and find the facts in an equity case when the facts are in dispute, we have not always held that it was reversible error when we have found that incompetent evidence had been admitted, because in most cases we could separate the incompetent from the competent and reach a conclusion from the legal evidence, but we have never meant to say that it was not error to admit incompetent evidence in an equity case or that the finding of the trial court would never be reversed for such error. Whether for such an error the finding would or would not be reversed would depend on the circumstances of the particular case.

Sometimes even in an equity case the judgment may be reversed and the cause remanded for a new trial."

So, in Walther v. Null, 233 Mo. 104, 134 S. W. 993 (quoted in the Lowe case), it was held that, in equity, where the case is a close one on the competent evidence, the admission of improper testimony may demand a reversal.

There seems to be no doubt, however, that the rule is applied in suits at law, as well as in suits in equity, where the state of facts warrants its application. But it is to be observed that in the instant case the competent evidence, as it appears upon the cold record, clearly preponderates in favor of defendant, and the incompetent evidence complained of goes, not to a mere collateral issue, but directly to the crucial issue on trial. Actual delivery of the notes to defendant by the deceased, endorsed by him, was clearly shown by disinterested testimony. Not only did the delivery of these notes, endorsed as they were, clothe the defendant with prima-facie evidence of ownership, but the declarations of the deceased made both before and after the delivery, and at the time of the delivery as well, unequivocally show an absolute, irrevocable gift, immediately effective, *inter vivos*. [Starks v. Lincoln, 316 Mo. 483, 291 S. W. 132; Lindhorst v. Werner, 216 Mo. App. 473, 270 S. W. 150; Chandler v. Hedrick, 187 Mo. App. 664, 173 S. W. 93; Telle v. Roever, 159 Mo. App. 115, 139 S. W. 256.] Of course, the learned trial judge, at the time he admitted the incompetent testimony, must have regarded it as competent for his consideration, else he would not have admitted it. Nothing transpiring subsequently at the trial indicates that he ever changed his mind concerning it. Rather, the contrary is indicated by the event of the suit in view of the apparent weight of the competent evidence. In this state of the record, we regard the admission of the incompetent testimony as prejudicial and therefore reversible error.

The commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Haid, P. J.,* and *Becker, J.,* concur; *Nipper, J.,* not sitting.