240 S.W.2d 903 (1951)
BOHNSACK et al.
v.
HANEBRINK et al.
No. 42304.
Supreme Court of Missouri, Division No. 1.
June 11, 1951.
Motion for Rehearing or to Transfer to Denied July 9, 1951.
*904 Jack O. Knehans, Cape Girardeau, for appellants.
Limbaugh & Limbaugh, Cape Girardeau, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied July 9, 1951.
CONKLING, Presiding Judge.
This appeal is from a decree which set aside, on the ground of undue influence, a deed executed September 26, 1947 by Theresa Hanebrink (hereinafter called grantor), which conveyed her real estate to six of her children, namely, Harry Hanebrink, Sherman W. Hanebrink, Wilson Hanebrink, Herbert Hanebrink, Mark Hanebrink and Lee Hanebrink, who are appellants here and were defendants below. Flora Hanebrink Bode and John H. Hanebrink, respondents here and plaintiffs below, are likewise children of grantor. Respondent Jane Adams Bohnsack, also a plaintiff below (whose mother is deceased), is a grandchild of grantor.
The petition alleged that the mind of grantor was weakened and impaired by illhealth; that she was susceptible, easily influenced and under the domination of defendant Harry Hanebrink, with whom grantor had a confidential relationship; that Harry Hanebrink participated in the execution of the deed; and that the execution of the deed was the result of undue influence and false and fraudulent representations of defendant Harry Hanebrink, her son. The petition prayed cancellation *905 of the deed and accounting as to rents and profits.
The decree of the trial court cancelled the deed upon the sole ground that it had been executed "as a result of undue influence exerted upon Theresa Hanebrink by defendant Harry Hanebrink" and denied accounting for insufficiency of evidence upon which to base accounting. Defendants have appealed and here contend the evidence is not sufficient to warrant cancellation of the deed.
It appears from the transcript that at the time of her death, June 16, 1948, grantor was 87 years of age. Her husband had predeceased her. She had never been able to read or write. She left surviving her the seven above named sons, her daughter Flora Hanebrink Bode, and her granddaughter, Jane Adams Bohnsack. All are parties to this action. Grantor's one remaining tract of real estate, her small home in Cape Girardeau, is the subject matter of this controversy.
Just prior to the fall of 1946 grantor lived alone in her home in Cape Girardeau at 337 Themis Street. She had theretofore been able to care for herself and her home. But, becoming unable to care for herself and her home, on September 23, 1946, grantor moved into the home of her daughter Flora Hanebrink Bode, in Cape Girardeau. At grantor's request some of her children sold grantor's furniture at auction. The proceeds of that sale were given grantor. Grantor paid her daughter ten dollars a week for board and room. Grantor became ill, was under the care of Doctor Schultz, and on June 30, 1947, entered the Southeast Missouri Hospital and there remained until August 27, 1947. Her children visited her in the hospital. When grantor left the hospital, her son, Harry, had her enter the Spradling nursing home in Jackson, Missouri, where she remained until November 11, 1947. Her children visited her in the nursing home. The deed in issue here was executed on September 26, 1947 while grantor was in the Spradling nursing home. The consideration expressed was "One dollar and other valuable considerations". On November 11, 1947, grantor re-entered the hospital and remained there until December 15, 1947. She was thereafter in Mrs. Hickam's home for elderly ladies until the middle of May, 1948. She was again in the hospital for twelve days in May, 1948. Thereafter she was again in the Hickam Home, and died there in June, 1948. There is no evidence that the existence of the deed was known to plaintiffs until after grantor's death. After her death the deed was in the possession of Harry Hanebrink. It had been filed in the Recorder's Office on the day of its execution.
When grantor came into Mrs. Bode's home to live in September, 1946, grantor had about $1800. Clarence Hanebrink, grantor's grandson, rented grantor's home and paid her $55.00 per month rent. Grantor paid $40.00 per month of this to Mrs. Bode for her board and room. Mrs. Bode then was banking grantor's money. When grantor went to the hospital she had about $2200. The increase was interest, proceeds from the sale of her furniture and rent. Mrs. Bode wanted "one of the boys" (her brothers) to take over her mother's financial affairs. Before going to the hospital grantor said she wanted her property to be divided equally among her children. After grantor was in the hospital a change was made in "the management of her property and her affairs." On July 18, 1947 while she was in the hospital, grantor by her mark, executed a general power of attorney to her son, Harry Hanebrink, giving him full power to manage, rent, lease and otherwise deal with "all my property, real and personal, as fully and to the same extent as I might do in my own proper person." That instrument was formally acknowledged and filed of record in the Recorder's Office. Harry thereupon secured grantor's "abstract, bank book * * * all the papers" from Mrs. Bode. Thereafter Harry took charge of his mother's business affairs, collected her rent, banked her money and paid her bills. The grantor had also owned certain real estate on William Street. She had sold that property and had given each of her children and her grandchild "a $100.00 war bond" from the proceeds of the sale. Grantor told Mrs. Hickam that she (grantor) "wanted (her *906 son) Mark left out of the deed because he wanted her (grantor) to go to Flora's"; and that grantor desired "to make a new deed to get him (Mark) out", but that Harry "talked her out of it."
Respecting the execution of the deed in question it appears from the testimony of the scrivener, Mr. Osler Statler, an attorney-at-law of Jackson, Missouri: that on September 26, 1947, two men he did not then know, but who introduced themselves as Harry and Sherman Hanebrink, came to his office; that they asked him to prepare a deed and gave him all the necessary information; that they waited while he prepared the deed in question; that they asked him to go with them to the Spradling Nursing Home to take their mother's acknowledgment to the deed; that he did go and Mrs. Hanebrink was "an old lady lying there in bed." Mr. Statler had never known or seen grantor before that occasion. He further testified that grantor's sons "told her (grantor) who I was and that I was the lawyer who fixed up this deed"; and "I know that I told her what the deed was * * * who the grantees were." Mr. Statler told grantor "it was to a lot in Cape Girardeau", but she did not ask to see the deed and asked no questions Mr. Statler could remember. "She didn't talk much, if any, except to answer my questions and to indicate she understood what it was all about." Statler testified he " * * * asked her (grantor) if that was what she wanted to do and she said it was * * * I know that I got the general impression that I definitely believe she knew what she was doing or I would never have taken the acknowledgment * * * she seemed to understand what she was doing and to agree to it. * * * Q. Well, you read the deed to her, I suppose? A. I don't know, I am sure I didn't read all the description." Grantor signed the deed by her mark while lying in bed. Statler testified that "I suspect that I wrote her name myself." Statler signed the deed as a witness and took grantor's acknowledgment.
It is not contended that there is any proof in this record that at the time the deed was executed grantor did not have sufficient mental capacity to make a deed. The record before us, however, gives a picture of grantor's condition. Mrs. Spradling, who operated the nursing home in Jackson, testified that grantor "wasn't a well woman at any time * * * she would get irritable about different things * * * she would talk rational sometimes and thirty minutes later it was kinda crazy." Dr. G. B. Schultz, grantor's physician, testified, in part:
"Q. And what was her affliction at the time, if you remember? A. Mostly senility and she had heart trouble with it.
"Q. Was she rational or irrational? A. She was both, rational at times and irrational at other times.
"Q. And did she apparently get better while she was in the hospital? A. No, I can't say she did, one time she would be all right, but the next time she wouldn't.
"Q. Then I believe she was taken to the Spradling Nursing Home, did you see her out there? A. Yes, sir.
"Q. And what was her condition while she was at the Spradling Nursing Home with reference to her mental condition? A. It was the same thing out there as it was at the hospital.
"Q. She was senile? A. Yes, sir.
"Q. And at times she was rational and at times she was not? A. That is right.
"Q. Doctor, is a person who is senile mentally capable of comprehending ordinary business affairs? A. That might all depend, I don't remember what her age was, she was up in the 80's, you will find a lot of people who are 80 who are of normal mind, others are not.
"Q. How about her, do you recall? A. Her mind wasn't normal in her latter years. I mean at periods she was rational and at periods she was not rational."
It is the position of defendants-appellants (as stated in their brief) that there is no evidence of undue influence in this record and that the decree of cancellation was not justified; that "a presumption of undue influence does not arise from confidential relationship alone but there must also be facts and circumstances tending to show undue influence"; that the "presence of grantees *907 at the time the deed was executed gave rise to no inference of undue influence"; and that "undue influence cannot be based on speculation and conjecture and cannot be inferred from mere suspicion or opportunity to exercise it."
Plaintiffs-respondents assert "the evidence discloses * * * that a fiduciary (and confidential) relationship existed between Harry Hanebrink and * * * grantor * * * and that Harry Hanebrink actively participated in the preparation and execution of the deed, which facts raise the presumption of undue influence, and, since the presumption has not been rebutted by appellants, the decree of the trial court should be affirmed."
Upon the appeal of equity cases we consider them de novo, and where the chancellor saw and heard the witnesses we usually defer to his findings and conclusions unless they are against the clear weight of the evidence or unless the proof is insufficient in law to sustain the chancellor. Ulrich v. Zimmerman, 349 Mo. 772, 163 S.W.2d 567; Dimity v. Dimity, Mo. Sup., 62 S.W.2d 859. The principles governing the consideration of undue influence as a ground for cancellation of a deed have been so many times announced that we need not here restate them. McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 705, 706; Ulrich v. Zimmerman, supra, and cases cited therein. And we agree with defendants, as of course, that "a presumption of undue influence does not arise from confidential relationship alone", and that undue influence cannot be inferred alone from mere suspicion or opportunity to exercise it.
This record reveals a confidential and fiduciary relationship between grantor and her son Harry Hanebrink, wherein grantor manifested especial trust in Harry in the management of grantor's business affairs. Horn v. Owens, Mo.Sup., 171 S.W.2d 585; Holland v. Anderson, Mo. Sup., 196 S.W.2d 175; Rich v. Baer, Mo. Sup., 238 S.W.2d 408; Dimity v. Dimity, supra. The son conducted those business affairs for grantor. But that relationship and the activity of Harry therein is not alone enough. There must be both such relationship and facts or circumstances tending to show undue influence. Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772; Ulrich v. Zimmerman, supra; Dimity v. Dimity, supra.
While there is no direct evidence here that Harry Hanebrink effected the execution of the deed by undue influence there are other facts and circumstances of record which compel our conclusion that the chancellor correctly ruled the cancellation issue. Harry Hanebrink was active in procuring the execution of the deed. Dimity v. Dimity, supra; Holland v. Anderson, supra. The chancellor could infer from Mr. Statler's testimony that there had been previous arrangements made by Harry Hanebrink with his mother to execute this precise deed. Further, and in addition to the confidential relationship and the activity of Harry in procuring the execution of the deed, the circumstances that by the deed in question some of a class, including Harry, profited over others of the same class; that theretofore grantor had desired her property to be equally divided; that those of grantor's children not named as grantees in the deed were not advised of its existence until after grantor's death; that the consideration of the deed was only one dollar; that grantor was not furnished by her son Harry with the independent competent advice of some wholly disinterested person; that grantor's son chose as the scrivener a stranger to himself and grantor; that grantor was bedfast, of advanced age, and often senile and irrational; and that there was opportunity for Harry to exercise undue influence and that it was to his advantage to do so, are all such highly pertinent circumstances that from the combination of them the chancellor could well have found, and no doubt did find, that undue influence existed as a fact and resulted in the execution of the deed. Holland v. Anderson, supra; Dimity, v. Dimity, supra; Morris v. Morris, Mo.Sup., 4 S.W.2d 459; Colquitt v. Lowe, Mo.Sup., 184 S.W.2d 420; Patton v. Shelton, 328 Mo. 631, 40 S.W.2d 706, 713, and cases therein cited. The above circumstances when singly considered may not seem significant; *908 but when viewed as a whole in their verity and power, and with the conceded facts of confidential relationship and the activity of Harry in the execution of the deed, we hold that they justify and support the chancellor's conclusion.
In Patton v. Shelton, supra, we said, in part: "From these cases it is clear that in every instance of a confidential and fiduciary relation of a nature that calls into action the presumption of undue influence there are two persons, one of whom is subservient to the dominant mind and will of the other by reason of the age, state of health, illiteracy, or mental debility of the subjected one. Since all of these cases concern property passing by deed or by will, there are also present in every case land, funds, a going business, or other things of value, which belong to the subservient one, but which often are possessed or managed by the controlling person. In some cases the person of influence with the owner merely advises concerning the property. We find in many of these cases also a control of the subject person by the other, due to the age or the mental or physical debility of the one having the power of disposition of property. And then there are the cases in which the one who stands to derive benefit takes a `pernicious activity' in the preparation and execution of the deed or will in controversy and in the persuasion of the grantor or executor to make the desired disposition of his property." And in Holland v. Anderson, supra, we held that "while it is legally possible for undue influence to be exerted on one of sound mind, yet where mental weakness exists it is an important factor to be considered." [196 S.W.2d 192.] (Citing cases.)
We have carefully read and considered the cases cited by defendants. Many of them are hereinabove cited by us. We agree that the mere presence alone of grantees at the time of the execution of a deed raises no inference of undue influence, McCoy v. McCoy, supra, but the facts here are quite different from those presented in the McCoy case. Here it is fairly inferable that Harry Hanebrink had been active in procuring the execution of the deed and had negotiated for it. We think that under all the instant facts and circumstances the conclusion of the chancellor upon the cancellation issue was inescapable.
Defendants also assign as error that the chancellor erred in refusing their offer to prove by defendant Harry Hanebrink, when he was on the stand as a witness for the defendants, that (1) the two wills of grantor, "testified to by plaintiff John Hanebrink did not make an equal distribution between all the children," (2) that grantor gave Jane Adams Bohnsack only a $50 war bond, and (3) that Mrs. Spradling asked permission of Harry Hanebrink to deny Flora Bode permission to visit her own mother at the Spradling nursing home.
Defendants have cited no authority and point out no reason of consequence why they contend the court erred in any of the above respects. We find no testimony with respect to two wills and no testimony as to the contents of any purported will of grantor. None of the offered testimony was pertinent to any issue before the court. If it had been admitted it could not in any event have affected or changed the trial court's conclusion upon the issue of the cancellation of the deed. The ruling on the offer of proof was not material to the merits of the case and could not operate to reverse the decree of the trial court.
In view of the facts and circumstances of record in this case, and giving to the trial court's findings and decrees the proper deferences where the proof of the facts essential to recovery rests upon oral testimony, we find no ground whatever to interfere with the judgment appealed from. It is clear to us that the execution of the deed in question was the result of undue influence. The judgment and decree entered below is therefore affirmed. It is so ordered.
HOLLINGSWORTH and DALTON, JJ., concur.
HYDE, J., not sitting.