In the Matter of the ESTATE of Theodore O. PETERSEN, Deceased.

Anna L. PETERSEN, Executrix, Respondent,

v.

Raymond O. PETERSEN, Appellant.

No. 45389.

Supreme Court of Missouri.
Division No. 2.

Nov. 12, 1956.

Edward C. Schneider, Harry A. Frank, St. Louis, for appellant.

Ralph R. Giessow, Clayton, for respondent.

EAGER, Presiding Judge.

Anna L. Petersen, as Executrix of the Estate of her husband, Theodore O. Petersen, instituted a proceeding for the discovery of assets against Raymond O. Petersen, the only son of the decedent, under Sections 462.400 to 462.440, RSMo 1949, V.A.M.S. The interrogatories, as filed, involved a note in the face amount of $8,000 secured by a deed of trust on certain real estate, and also certain corporate stocks; at the hearing in the probate court counsel for the executrix waived her claims to the corporate stocks. In his answers to the interrogatories Raymond O. Petersen admitted possession of the note and deed of trust and claimed title thereto by virtue of an

alleged gift from his father in May, 1952. The parties will be referred to as plaintiff and defendant. Since the interrogatories and the answers thereto settle the issues, In re Estes' Estate, Mo., 166 S.W.2d 1061; White v. Fitzgerald, Mo.App., 263 S.W.2d 454, the ultimate question here simply is: was there or was there not a gift inter vivos of this note and deed of trust from the father to his son? Following a trial in the probate court, an appeal was taken and the circuit court heard the case de novo without a jury. On December 28, 1955, it entered judgment in favor of the Estate, found generally that the defendant was wrongfully withholding the principal note, three unpaid interest notes, the deed of trust, and the accompanying insurance policies, and ordered delivery to plaintiff forthwith. Motion for new trial was overruled and this appeal was duly taken.

■ In this proceeding the property rights of the parties are determined, and the action is one at law. State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909; Davis v. Johnson, 332 Mo. 417, 58 S.W.2d 746; In re Main's Estate, 236 Mo.App. 88, 152 S.W.2d 696. At this point we recite the substance of the evidence, but in more or less chronological order, rather than in the order of its introduction. Theodore O. Petersen and his brother, Adolph, had for years operated a planing mill in St. Louis, incorporated under the name of Petersen Planing Mill Company. Theodore was President, Adolph was Secretary-Treasurer, and Raymond was an employee, his title being foreman. Theodore had been in failing health for some years, and he was not particularly active in the business for the last several years of his life, but he continued to come to the office almost every day. Theodore and Adolph were also stockholders and directors of A. J. Meyer and Company, a corporation engaged in the real estate and loan business in St. Louis; they and Meyer, who was President and Manager of that company, owned all the stock except one qualifying share held by Hazel M. Stadler,

the secretary. On or about September 1, 1950, Raymond O. Petersen bought for investment an apartment building or flat at 3452–54 Montana Avenue in St. Louis, making the purchase through the Meyer Company. He paid part cash and borrowed the balance of $8,000 from that company, executing, with his wife, the principal and interest notes here in question and securing them by an appropriate deed of trust, duly recorded. These are the instruments which are directly involved here. The principal note was dated September 1, 1950, and was payable in 36 months to the order of "H. M. Stadler"; the six interest notes were payable on March 1st and September 1st of each year, each being in the amount of $160. All of these notes were endorsed in blank without recourse by the payee. The notes, deed of trust, certificate of title and the insurance policy were placed in a loan envelope bearing, in longhand, notations of the details of the transaction. On January 18, 1951, this loan was sold to one Letter and the papers were delivered to him. On December 3, 1951, the Meyer Company repurchased the loan, and on the same date sold it to Theodore O. Petersen, taking his check for $8,082.67; no further endorsements of the notes were made by anyone. The loan papers were delivered to Petersen by Meyer at the planing mill office. Pursuant to its routine practice the Meyer Company, on February 11, 1952, and August 11, 1952, sent to "Mr. and Mrs. Theo. Petersen, 3985 Wilmington Avenue," notices that on March 1, 1952, and September 1, 1952, respectively, interest notes would be due, and that if the note in question was presented at its office collection would be made without charge. On April 4, 1952, Theodore Petersen brought in the first interest note and it was paid out of a rental account which the company was handling for the makers. The interest note due September 1, 1952, was not presented, and so far as Meyer knew, was never paid.

Defendant's claim of a gift is based largely upon the testimony of Adolph Peter-

sen, his uncle. He testified: that "shortly after income tax * * * about May 1952" he saw his brother Theodore produce an envelope from his pocket and give it to Raymond saying, "Here, Ray, I want to give you this"; that Raymond pulled the contents out and "mashed them" back in the envelope, and said: "Thanks. This $8,000 will help me a lot"; that there was no other conversation whatever; that the witness never saw the papers before or after; when asked if he saw any writing on the outside of the envelope the witness stated: "All I could tell you was Montana." He further testified: that he personally saw none of deceased's papers in the office safe after his death, and that he knew nothing of the whereabouts of his will, corporate stocks, or any loan papers at the time of his death; that deceased owned 99 shares of the capital stock of the planing mill, and that on May 5, 1948, he signed a new certificate for the same number of shares in the names of deceased and his son jointly, with right of survivorship; and that Mr. Schneider (apparently the company attorney) was then present. Over objection, the witness also testified that he had, since Theodore's death, sold his own planing mill stock to Raymond, who was then President of the company.

Anna L. Petersen, the widow, testified that she was deceased's second wife, that she married him in 1918 when Raymond was only eight years old, and that he continued to live with them until he was twenty-four; she further testified: that Mr. Petersen died on December 29, 1952; that on the day after his funeral, January 3, 1953, Raymond came to her home for some of the floral cards; at that time he asked her about some "AT & T" stock which he said he "had an interest in"; she apparently knew little or nothing about this, but in the same conversation she asked Raymond about the "$8,000 Montana Avenue transaction," and he said that "he knew nothing of it." There was no further conversation, and Raymond never came to her home after that, nor did he communicate with her. Mrs. Petersen found the interest notices at home with some bonds, the latter of which she turned over to Raymond or his attorney. This witness had been cautioned that she should testify to nothing which occurred prior to the death; this may have been responsible, in part, for some asserted confusion in her testimony; be that as it may, she apparently testified that the first time she saw the interest notices was after the death (although the questions and intervening comments of court and counsel are in themselves somewhat confusing) and that she probably first saw the deed of trust in the probate court. She testified that she did not have the will of the decedent and that the first she knew of it was when she was notified that it had been filed in the probate court.

Mrs. Petersen's brother, George E. Schlemmer formerly of St. Louis and then District Manager of an insurance company in Poplar Bluff, testified: that he frequently visited the Petersens during the period in question, probably two or three times a week; that Mr. Petersen was "a pretty sick man" for four or five years prior to his death, and that he grew worse from about August, 1952; he, the witness, had been taking Petersen to the doctor; that on Mr. Petersen's birthday, August 29, 1952, he was at their home; on this occasion the witness brought up again the idea that Mr. Petersen should get away on a short trip, perhaps to Excelsior Springs; at this Mr. Petersen smiled, and replied that when "Raymond and Anne" paid the $160 interest note which was due, he could use that money for the trip. The witness very frankly admitted that he knew that Mr. Petersen did not really need that money for the trip. He further testified: that his sister showed him the interest notice of August, 1952, on this occasion; that the notice was all he then saw, but that, as he recalled, he had previously seen the note or deed of trust at one time and they had discussed it, at which time Mr. Petersen had said that "he wanted to protect his

wife, that that $8,000.00 would be her money."

A record card of the Meyer Company was offered in evidence and this has been discussed in both briefs. It contained sundry loan data and showed the loan "sold to" Mr. and Mrs. Letter on January 18, 1951; their names and address were marked out in pencil and the names of "Mr. or Mrs. Theo. O. Petersen, 3985 Wilmington Avenue" inserted (above), with the date "12/31/51"; then the address "3985 Wilmington Avenue" had been ruled out in pencil, and above the names "Mr. or Mrs. Theo. O. Petersen" appears "c/o Petersen Planing Mill," while slightly lower appears "2800 Lyon St" (the address of the planing mill, and presumably the business addresses of both Mr. Petersen and his son). In handwriting at about the center of the card appears "no control take out of file 11–25–52." Mr. Meyer was the only witness who knew anything about this card. He testified: that interest notices were sent from the data on the card; that he did not know who changed Petersen's address or when; and that it was his opinion (unobjected to) that the address of the Petersens was not changed until after the second interest notice went out on August 11, 1952. With reference to the "no control" notation, he stated: that the writing was Miss Stadler's that she was actually only an employee, and that he did not know who instructed her to make the notation; that the memorandum "could or could not mean anything," and that if it meant anything to his company it merely meant that they could not renew the loan.

It was shown that the "AT & T" stock of deceased had been regularly transferred on the books of the company during 1949 and 1950 to the joint names of deceased and Raymond "as joint tenants with right of survivorship and not as tenants in common"; and indeed the planing mill stock of deceased was also re-issued in that identical manner. Certain other evidence, the admission of which is now complained of,

will be discussed later in this opinion. It was stipulated that the deed of trust here in question had never been released of record. The defendant offered in evidence a copy of Schedule O of the Federal Estate Tax Return of the Executrix which showed a total gross estate of $171,544.01, including all jointly-held property. It was also stipulated that by the will of the decedent Raymond was bequeathed another piece of real estate, with all the residue and remainder to the widow if she survived. Raymond Petersen did not testify. There was no evidence to show where the note and deed of trust were at the time of Mr. Petersen's death. The answer of defendant to Interrogatory 8 states that "said note and deed of trust were in my possession on December 29, 1952, for safe keeping. They were placed in my safe deposit box."

■ Since this case was tried without a jury, it is controlled on appeal by Section 510.310 RSMo 1949, V.A.M.S. Defendant's counsel cite various cases in support of the proposition that this court may make its own independent findings and reach its own conclusions. We have examined these cases, but it will be unnecessary to discuss them. The rule seems clear that the appellate court should independently consider the evidence and reach its own conclusions, but where the evidence is conflicting and close, and particularly where the decision depends upon conflicting oral testimony and the credibility of witnesses, it should generally defer to the findings of the trial court unless satisfied that the findings should have been otherwise. Middleton v. Reece, Mo., 236 S.W.2d 335, 341; Cross v. Gimlin, Mo., 256 S.W.2d 812; Bohnsack v. Hanebrink, Mo., 240 S.W.2d 903; Cosentine v. Heffelfinger, 360 Mo. 535, 229 S.W. 2d 546, 549; Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289; Redden v. Boehmer, Mo. App., 223 S.W.2d 127.

■ Before passing to other points, it will be necessary to consider defendant's contention that we should ignore certain evidence as wholly incompetent and prej-

udicial, although not objected to. This involves the testimony of George Schlemmer, digested above. As we understand the contention, counsel say that they understood from remarks of the court that objections were unnecessary. Space will not permit us to recite these colloquies, but when counsel for plaintiff was examining the witness Meyer counsel for defendant objected that matters inquired about did not tend to prove any issues and invaded the province of the court; the court then stated: "Let's get practical about this now"; that he could "accept or reject" such evidence as a jury could not do, and that whether an objection was made or not "in some instances," would not make too much difference. A somewhat similar occurrence took place later in the trial; at that time the court said, in overruling a motion to strike: "We have no jury * * * and if it has no value, I will discard it." Counsel's position seems to be that by reason of these remarks all necessity for further objections was waived, and that we should consider here, independently, the admissibility of the contested evidence on all grounds. We cannot accept that position in its entirety. It is unfortunate if counsel were misled, but we cannot now consider the evidence as though every possible objection had been made to it. The essential meaning and intent of these colloquies, as we view them, was that the trial court would independently determine, without objection, the materiality of the evidence proffered, disregarding it if immaterial. To hold otherwise would be to place the burden on the appellate court of passing initially on every objection which ingenious counsel might think of upon appeal. The evidence of Mr. Schlemmer is thus attacked here as consisting principally of self-serving statements of the decedent. Certain of those statements were self-serving, but that objection should have been called to the attention of the trial court. To rule otherwise would, in effect, be to abandon all rules of evidence in this jury-waived case. Testimony consisting of self-serving statements or any hearsay, may be relevant and may have some probative val-

ue, if received without objection. Crampton v. Osborn, 356 Mo. 125, 201 S.W.2d 336, 340, 172 A.L.R. 344; Sawyer v. French, 290 Mo. 374, 385, 235 S.W. 126, 130. This evidence had some probative value, and we think that the trial court might and this court may properly consider it. In the case of Hornsey v. DeVoto, 223 Mo.App. 340, 16 S.W.2d 630, cited by counsel, objections had been promptly made to the admission of the self-serving statements which the court held to be improper.

At this point we may clarify the situation somewhat by disposing of the remaining contentions concerning the admission of evidence. Counsel insist that other evidence was erroneously admitted, over objections or motions to strike, because such was wholly incompetent and irrelevant, and that it was all prejudicial. The evidence so complained of was: questions to and answers of Mr. Meyer concerning an audit of the company books showing an indebtedness to decedent; a receipt showing the delivery by defendant's counsel to plaintiff's counsel in February, 1953, of loan papers on an "Ermantraut" loan owned by deceased, a certificate for stock in the South Side National Bank, the "bank balance" in said bank, a note for $7,000 executed by A. J. Meyer & Co. marked "duplicate," and an "AT & T" envelope apparently containing a dividend check; also, evidence concerning the "Ermantraut" loan, the stock owned by decedent in the Petersen Planing Mill Company and "AT & T," and the sale of stock in the former company by Adolph Petersen to defendant.

■ It is at least doubtful whether objections were properly made in all these instances, but in view of our prior ruling we think that the materiality of the evidence should be considered. The evidence concerning the ownership of corporate stocks, and the transfer of these to the joint names of decedent and his son, and evidence of the financial situation of deceased generally, was admissible as part of the general circumstances surrounding and antedating the

alleged gift, and as bearing on decedent's possible intent. 38 C.J.S., Gifts, § 66 c, pp. 867–868. Indeed, defendant has joined in this issue by introducing a schedule showing the various items constituting decedent's total gross estate and the deductions allowable, and by stipulating to the contents of decedent's will; and even here his counsel argues the fact and meaning of the transfer of the stocks to joint names (Br.39). The evidence of any indebtedness of the Meyer Company to deceased, and his ownership of the Ermantraut note were, we think, admissible on the same theory. The other evidence complained of, if inadmissible, was certainly not so prejudicial as to require the reversal of a non-jury case. Counsel cite cases to the effect that even a jury-waived or equity case may be reversed for the admission of incompetent and prejudicial evidence; certainly that is not done in the ordinary case, nor do we think the present situation is one for the application of such a rule.

 Generally, one claiming a gift has the burden of proving the gift by clear, cogent and convincing evidence. Genteman v. Sutter, Mo., 215 S.W.2d 477; Ridenour v. Duncan, Mo., 246 S.W.2d 765; Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28; Smith v. Smith, Mo.App., 192 S.W.2d 691. And some authorities indicate, especially where the contention of a gift is not asserted until after the donor's death, that the proof thus required should leave no room for a reasonable doubt. St. Louis Union Trust Co. v. Busch, 346 Mo. 1237, 145 S.W.2d 426; Ridenour v. Duncan, Mo., 246 S.W.2d 765. The evidence must, of course, show a delivery with the clear intent on the part of the donor to pass title immediately and to relinquish all control. Counsel assert that, where no fraud or undue influence is shown, less positive evidence will suffice to establish a gift between father and son than between strangers; and extending this in the argument, they contend also that the evidence here raised a presumption of a gift. In the case of In re Harlow's Estate, 239 Mo.App. 607,

192 S.W.2d 5, 11, after stating the strict rule of proof generally required to establish parol gifts, the court said that "less positive and unequivocal proof" is required to show a *delivery* by a donor who bears a blood relation to the donee than between persons not related. But, in McBride v. Mercantile-Commerce Bank & Trust Co., 330 Mo. 259, 48 S.W.2d 922, also cited, the court indicated that there is a divergence of authority on the subject. And see Denny v. Brown, Mo., 193 S.W. 552; Cremer v. May, 223 Mo.App. 57, 8 S.W.2d 110; In re Martin's Estate, 219 Mo.App. 51, 266 S.W. 750. Be that as it may, we think that question is of only academic importance here, for defendant relied on the very specific testimony of Adolph Petersen to prove both a delivery and an expressed intent; if that evidence was believed, there could remain little doubt of the gift; if not believed, a gift could hardly have been established. So the exact quantum required of defendant's evidence here is not so important. The authorities clearly establish the fact that the burden of proof was on defendant to prove the gift, and the fact that he was a son or other blood relative of the alleged donor does not change this rule. In re Kaimann's Estate, 360 Mo. 544, 229 S.W.2d 527; Tygard v. Falor, 163 Mo. 234, 63 S.W. 672; Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28; Roelofson v. Whitten, Mo.App., 249 S.W. 688; Cremer v. May, 223 Mo.App. 57, 8 S.W.2d 110; In re Martin's Estate, 219 Mo.App. 51, 266 S.W. 750. And this burden never shifts. Spencer v. Barlow, 319 Mo. 835, 5 S.W.2d 28. We note here also that where a gift is not asserted until after a donor's death, it is viewed with some suspicion, and the requirement of clear and convincing proof to establish it is particularly applicable. In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401; Ridenour v. Duncan, Mo., 246 S.W.2d 765.

So far as concerns the contention of a presumption of gift, we do not think there is any place in this evidence for such, even if the law is as counsel contends. Such a presumption could only tend to show the

donor's intent, a delivery having been otherwise shown. 67 C.J.S., Parent and Child, § 60, p. 774. The trial theory of defendant here was founded upon explicit and positive evidence of a delivery and of an expressed intent, inalterably tied together; both must be believed or both rejected. There is no place here for a presumption. And, in any event, the presumption would disappear completely upon the production of substantial evidence to the contrary; and there was such evidence here. Michler v. Krey Packing Co., Banc, 363 Mo. 707, 253 S.W.2d 136, 140; State ex rel. Waters v. Hostetter, Banc, 344 Mo. 443, 126 S.W.2d 1164.

Defendant urges that the delivery of the note in question was a "renunciation" under Section 401.122 RSMo 1949, V.A.M.S. This contention is not included in the points relied on and may not be considered. Actually, however, it would add nothing to the contention of a gift.

The only affirmative evidence tending to establish a gift was the testimony of Adolph Petersen; with this may be considered certain circumstances, such as the failure to present the September interest note, and the record card of the Meyer Company, for whatever the latter may be worth. The trial court could, and apparently did, disbelieve Adolph; the circumstances referred to were, under all the facts, of questionable importance; it is impossible to discuss the various possible inferences and counter-inferences here, or the asserted inconsistencies in some of the evidence. Adolph Petersen, in relating the very casual manner in which deceased supposedly gave his son this note, stated that the only writing he saw on the envelope was "Montana"; the photostat of that exhibit demonstrates that it would be virtually impossible for a casual observer, merely standing by, to read any of the rather small longhand inscriptions on the envelope. And the method of transfer thus claimed was totally different from the meticulous and technically correct manner in which deceased trans-

ferred his corporate stocks to joint names. Since the burden of proof was on the defendant, if the trial court chose to disbelieve his evidence, it was not necessary that there be affirmative evidence to support the finding. In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401; Milne v. Chicago, R. I. & P. R. Co., 155 Mo.App. 465, 135 S.W. 85. This does not mean, of course, that the court could have given a peremptory declaration under these circumstances. But there was also the following evidence: on the day after the funeral defendant told his stepmother that he knew nothing of the "Montana" transaction; although he was then inquiring about corporate stocks; he never thereafter visited her or called her; the deed of trust was not released nor was the note cancelled when the supposed gift was made, nor at any subsequent time; there was no writing whatever to corroborate the claimed gift, either by endorsement of the notes, or by marking them "paid," or otherwise; the deceased had provided very substantially for his son by transfers of corporate stocks to their joint names, and by the devise of a piece of real estate; and the will of decedent was simply filed in the probate court, the widow not knowing where it came from, nor did Adolph Petersen know. In the light of this evidence the trial court might well have found for plaintiff even without the testimony of George Schlemmer, of which defendant now complains. We note further that the defendant did not testify, even to controvert the admission attributed to him by the widow; we realize that the scope of his testimony would necessarily have been limited under Section 491.010 RSMo 1949, V.A.M.S. There was no evidence whatever as to where these notes and the deed of trust were from the time of the alleged gift until Mr. Petersen's death, and counsel is wholly outside the record in stating, as a fact, that defendant from May, 1952 on "held possession" thereof (Br.37). We note also the rather peculiar answer of defendant to Interrogatory 8, in which he states that the note and deed of trust were in his possession on December 29, 1952 "for

safe keeping"; this, of course, is by no means conclusive.

We do not consider this as a case for the application of Rule 3.27, 42 V.A.M.S., as counsel suggest. We see no "plain error," nor has manifest injustice resulted. We have independently considered the case on both the law and the evidence, and, allowing due deference and regard to the finding of the trial court in view of its opportunity to evaluate the oral testimony, we conclude that its finding and judgment should be affirmed; certainly we cannot say that the judgment was clearly erroneous. (See § 510.310, supra.)

The judgment is hereby affirmed.

STORCKMAN, J., and STONE, Special Judge, concur.

LEEDY, J., not sitting.