**MOHAWK REAL ESTATE SALES, INC., a Corporation, Plaintiff-Respondent,**

**v.**

**Samuel E. CRECELIUS and Emilie E. Crecelius, Defendants-Appellants.**

**No. 32832.**

St. Louis Court of Appeals. Missouri.

Jan. 16, 1968.

Leyhe, Jacobsmeyer & Meyer, R. W. Jacobsmeyer, Clayton, for defendants-appellants.

J. L. London, Carroll C. Gilpin, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

In this action for damages for breach of a written contract the court, sitting without a jury, rendered a judgment in favor of plaintiff and against defendants for $14,952.00, including interest, and defendants appealed.

As its name indicates, plaintiff Mohawk Real Estate Sales, Inc., is a corporation engaged in the sale of real property. Maroon Brothers, Inc., is a building and development corporation. The evidence indicates the existence of some relationship between the two, but the precise nature of that relationship—whether one owned the stock of the other, or whether they merely had common stockholders—was not disclosed. All that was shown was that at

the time the events occurred which gave rise to this suit Frank J. Maroon was vice-president of Mohawk Real Estate and president of Maroon Brothers. Defendants, who are husband and wife, were the owners of a tract of land of approximately 20 acres, located on Buckley Road in St. Louis County. On February 2, 1957 defendants entered into a sales contract whereby they agreed to sell, and Maroon Brothers to buy, all of their property except a parcel fronting 200 feet on Buckley Road with a depth of 230 feet. The contract provided that the sales price was to be $4200 per acre and that the tract was to be surveyed at the purchaser's expense to determine the exact amount of acreage.

Plaintiff's evidence was that subsequent to the execution of the sales contract on February 2, 1957, Frank J. Maroon (on behalf of which company was not stated) negotiated with the defendants concerning a part, amounting to 0.678 of an acre, of the 200 by 230 feet parcel which defendants had excepted from the sales contract. The import of such evidence was that both parties decided that it would be to their mutual interest if plaintiff developed the 0.678 parcel at the same time that plaintiff developed the approximately 20 acres it had contracted to purchase; and that a contract of the nature of that subsequently executed was agreed upon. Defendant's evidence was that no such negotiations or discussions occurred and that the first they heard of the subsequently executed agreement concerning the 0.678 acre was when they met for the closing of the sale of the 20 acres.

The sales contract provided that the sale of the 20 acres was to be closed on May 2, 1957, provided that certain contingencies not here material were satisfied. It is undisputed that a meeting was held on that day at the office of the Jolly Real Estate Company, as provided in the sales contract. There were present Frank J. Maroon; his father, Charles Maroon, who was then president of Mohawk Real Estate and who died prior to the trial; both defendants; and Roland Jolly, defendants' real estate

agent. There is no dispute about the fact that the sales contract was closed and that defendants conveyed their approximately 20 acres, except the 200 by 230 feet parcel, to Mohawk Real Estate, although their sales contract was with Maroon Brothers. There is, however, a sharp dispute in the evidence regarding the circumstances surrounding the execution of the so-called option agreement which is involved in the present suit. Defendants testified, as stated, that they had had no negotiation or discussion concerning an option agreement prior to the meeting on May 2, 1957; that plaintiff refused to close the sale of the 20 acre tract unless defendants executed the option agreement; that they repeatedly refused to execute the option agreement, and after 3 or 4 hours of argument finally signed only because Mrs. Crecelius was ill and crying and they wanted to get away; that Mr. Crecelius had eye trouble and neither read nor understood the option agreement; and that it was not fully read to them.

Frank J. Maroon and Roland Jolly testified, on the other hand, that there was no argument about the option agreement or refusal on the part of defendants to sign it; that the instrument in its entirety was read to defendants; that they readily signed the agreement and acknowledged before Jolly, who was a notary, that they had executed it as their free act and deed; and that the closing of the sales contract and the execution of the option agreement all occurred in a much shorter period of time than that stated by defendants.

The document titled "Option Agreement," which plaintiff's evidence showed was drawn by its lawyer, is too lengthy to set forth in full, and only those portions will be quoted which we deem material. The defendants are named therein as parties of the first part, and Mohawk Real Estate Sales, Inc., as party of the second part. In the first paragraph of the preamble it is recited that the defendants are the owners of the entire 20 acre tract, which is described by metes and bounds. Despite the fact that the sales contract was be-

tween Maroon Brothers and defendants, in the second paragraph of the preamble it is stated, "Party of the second part (Mohawk Real Estate), has contracted for the purchase, from parties of the first part, for most of the aforesaid described tract, * * *." The recitation continues that two portions had been excepted from such contract of sale, "* * * one of said portions said parties of the First Part desire to retain, and out of the other portion, an option is hereby given to said party of the second part to purchase upon the following terms and conditions, the following described tract of 0.678 acres, * * *." There then follows the description by metes and bounds of the 0.678 acre. The body of the instrument is divided into numbered paragraphs. In paragraph 1 it is stated that the defendant thereby grants an option to plaintiff "* * * as to the above described parcel * * *" and that plaintiff accepts said option. Paragraphs 2, 3, 4 and 5 read as follows:

"2. Parties of the first part reserve the right within three years from the date hereof, to decide to retain the aforesaid 0.678 acre tract, then only for the purpose of conveying all or portions thereof to their children or grandchildren, with the intention that said children or grandchildren shall occupy the same for their individual uses, and if they so decide to retain the same, then they shall pay party of the second part the following sums, if exercised, to wit:

One year after date, the sum of $10,000.00

Two years after date, the sum of $10,400.00

Three years after date, the sum of $10,800.00

"3. In the event said parties of the first part decide not to exercise their right to retain said 0.678 acre tract, then party of the second part agrees to purchase same on the following basis, and on the dates herein set out, to wit:

One year after date, the sum of $2,900.00

Two years after date, the sum of $3,000.00

Three years after date, the sum of $3,100.00

"4. Party of the second part, is hereby given the right and privilege, upon and after acquiring the whole tract as set out hereto-fore, to engineer and improve said 0.678 acre tract to conform with the contour of the whole tract and it is to be given easements over said 0.678 acre tract for the purpose of installing sewer lines as well as for other utility purposes.

"5. In the event said parties of the first part, during the period of three years from date hereof, fail to exercise their right to retain said 0.678 tract, then they shall sell the same to the party of the second part upon the terms as set out herein before."

It is clear from all of the evidence that shortly before the expiration of the three year period mentioned in the option agreement defendants requested plaintiff to grant an extension of that agreement, that defendants consented to do so, and that the parties executed what is titled, "Extension and Amendment to 'Option Agreement'." By that document the parties agreed to extend the option agreement for a period of one year, the same terms and conditions to apply, except that defendants were to pay plaintiff $11,200 if defendants exercised their right to retain the 0.678 acre tract, and if defendants did not do so then plaintiff was to pay defendants $3200 for such tract. Before the expiration of the one-year period defendants consulted counsel regarding the option agreement, and on April 28, 1961, their lawyer, Mr. R. W. Jacobsmeyer, wrote both Maroon Brothers and Mohawk Real Estate a letter in which he stated that defendants desired to retain the 0.678 acre tract mentioned in the document dated May 2, 1957; that due to the ambiguities and uncertainties contained in the option agreement and the extension agreement he requested, "* * * an immediate meeting so as to determine how

this matter may be further negotiated and settled"; and concluded the letter with the following paragraph:

> "By so notifying you of the desired retention of the ground mentioned in the aforementioned agreement, this letter in no way purports to admit to any matters contained in the agreements that may or may not be binding on my clients."

While plaintiff's evidence does not indicate precisely when such developments occurred, it shows in a general way that after the execution of the option agreement on May 2, 1957, the acreage it bought under the sales contract of February 2, 1957, as well as the 0.678 acre parcel, was developed by either Maroon Brothers or Mohawk Real Estate by the laying out and construction of streets (one of which bordered on the 0.678 acre parcel), and the installation of sewers, gas mains, and perhaps electric service. Such evidence of plaintiff's also showed that the 0.678 acre tract increased in market value about $10,000 or $11,000 more than the value of the undeveloped land, and that it cost about $40 a front foot to develop the ground. Defendants introduced no countervailing evidence as to the increase in value of the 0.678 acre by reason of the improvements.

It was alleged in plaintiff's petition, and specifically admitted in defendants' answer, that on July 11, 1961 defendant by a general warranty deed conveyed the 0.678 acre parcel to Melvin H. Crecelius, Jr. and Virginia D. Crecelius, which deed was recorded on July 18, 1961. Defendants having failed and refused to pay, plaintiff thereafter instituted this action.

■ Defendants' primary point is that the option agreement is invalid because it was not supported by a consideration. They argue that while they promised to pay plaintiff $10,000 or more if they elected to retain the 0.678 acre, "* * * Plaintiff promised nothing to Defendants in return for this promise nor did they incur any legal liability which could be construed as a consideration flowing to Defendants."

In furtherance of that argument they lay great stress upon the title of the instrument "Option Agreement," and maintain that it is essential to the validity of an option that it be supported by a consideration, which consideration must be a thing apart from the consideration for the sale of the land. Ragan v. Schreffler, Mo., 306 S.W.2d 494, 499. We concur. For an option is in effect no more than a continuing offer on the part of the optionor to sell within a stipulated time, and not binding upon or enforceable against the optionee unless and until he elects to exercise his option. Ragan v. Schreffler, supra; Chapman v. Breeze, 355 Mo. 873, 198 S.W.2d 717.

■ However, the nature and validity of the instrument before us must be determined from all of its provisions, not from its title. And whether the portion in which defendants granted and plaintiff accepted an option is or is not void is immaterial. This for the reason that plaintiff's action is not based upon a claim that it exercised its option to purchase the 0.678 acre tract and that defendants failed and refused to sell and convey the same. Plaintiff's claim is founded upon a breach of paragraph 2 wherein defendants promised and agreed to pay plaintiff a stated sum if defendants elected within the three year period to retain the 0.678 acre parcel. Our inquiry, then, is narrowed to the question of whether plaintiff gave any consideration in return for defendants' promise to pay.

■ In view of defendants' assertion that the agreement is invalid for want of consideration, and at the risk of appearing pedantic, it may not be amiss to quote the definition of the term given in Restatement, Contracts, Vol. 1, § 75, p. 80:

> "(1) Consideration for a promise is
>
> (a) an act other than a promise, or
>
> (b) a forbearance, or
>
> (c) the creation, modification or destruction of a legal relation, or

(d) a return promise,

bargained for and given in exchange for the promise.

(2) Consideration may be given to the promisor or to some other person. It may be given by the promisee or by some other person."

In the light of that definition we cannot agree with defendants that they received nothing from plaintiff in return for their promise to pay plaintiff. Defendants overlook or ignore the binding effect of paragraph 3 of the agreement. In that paragraph plaintiff bound itself to buy the parcel in question for a stated amount in the event defendant decided within the three year period not to retain it. Defendants also overlook or disregard the force and effect of paragraph 5 which provides that if defendants fail during the three year period to exercise their right of retention then defendants were obligated to sell the parcel to the plaintiff upon the terms set forth. Thus the consideration which plaintiff gave and defendants received for their promise to pay or sell was plaintiff's specific and binding promise to buy the tract. As is made clear by the decisions of our appellate courts and by the Restatement on Contracts, the recognized general rule is that a promise by one party to a contract is sufficient consideration for a promise by the other party. Burger v. City of Springfield, Mo., 323 S.W.2d 777; Ragan v. Schreffler, Mo., 306 S.W.2d 494; Braudis v. Helfrich, Mo., 265 S.W.2d 371; Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S.W.2d 7; Green v. Whaley, 271 Mo. 636, 197 S.W. 355; Restatement, Contracts, Vol. 1, Section 75, p. 80; Section 77, p. 86.

Defendants also assert that the court erred in admitting into evidence the option agreement and the extension agreement, "* * * because they are vague, ambiguous and invalid instruments * * *." At the time such exhibits were offered and received in evidence no objection to their admission was made on the grounds that they were vague and ambiguous. Defendants, therefore, are in no position to raise such a point on appeal. Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736; Ensign v. Home for the Jewish Aged, Mo.App., 274 S.W.2d. 502. Had such an objection been made it should have been overruled, for while the agreements are not models of draftsmanship, defendants promise to pay or sell and plaintiff's promise to buy are set forth with sufficient clarity and definiteness in paragraphs 2, 3 and 5. At the time the extension agreement was offered, some time after the admission of the option agreement, defendants did raise an objection to the reception of both exhibits on the grounds that they lacked consideration. What we have already said on the subject of consideration disposes of that objection.

Defendants' final point is that the option agreement and the extension agreement are invalid because they were obtained from defendants by fraud and duress. Such issues were injected into the case by defendants' amendment of their answer at the start of the trial. Since both are affirmative defenses, Civil Rule 55.10, V.A.M.R., the burden of proving them rested on defendants. Mochar Sales Co. v. Meyer, Mo., 373 S.W.2d 911; Gennari v. Prudential Ins. Co. of America, Mo., 335 S.W.2d 55. In their argument defendants refer only to their own evidence regarding the circumstances under which they executed the option agreement and completely ignore all of plaintiff's countervailing evidence. Assuming, without deciding, that defendants' evidence was sufficient to sustain their burden of proof the fact remains that in all material respects it is in direct conflict with the testimony of Maroon, and with the corroborating testimony of Jolly. Civil Rule 73.01(d) provides that in reviewing a case tried upon the facts without a jury the appellate court shall not set aside the judgment unless it is clearly erroneous, and that "* * due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *" Our Supreme Court has said that where, as here, the evidence is conflicting and close,

and particularly where the decision depends upon conflicting oral testimony and the credibility of the witnesses, an appellate court should generally defer to the findings of the trial court unless satisfied that the findings should have been otherwise. Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W.2d 833, 850; In re Petersen's Estate, Mo., 295 S.W.2d 144, 148. Under this record we cannot say that the judgment was clearly erroneous. In re Petersen's Estate, supra.

The judgment is therefore affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.